**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GRACE MURRAY, on behalf of herself   and others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>GROCERY DELIVERY E-SERVICES USA INC. DBA HELLO FRESH,<br><br>                    Defendant. | Case No. 19-cv-12608-WGY |

**Plaintiff's Opposition to Defendant's Motion to Compel Arbitration**

Plaintiff Grace Murray is a local resident who placed her number on the National Do Not Call Registry years ago to prevent unwanted solicitation calls. Despite Ms. Murray taking this affirmative step, the Defendant Grocery Delivery E-Services USA Inc. DBA HelloFresh ("HelloFresh") called her multiple times without her permission in violation of the Telephone Consumer Protection Act ("TCPA"). Faced with being taken to task for this uniform conduct through a putative class action lawsuit, HelloFresh seeks to impose arbitration contract terms on Ms. Murray, an ex-customer it tried to "win back" through the unsolicited phone calls. HelloFresh's motion is an example of what this Court has dubbed "'forced arbitration,' that one-sided species of arbitration unconscionably forced on vulnerable consumers and workers and almost universally reviled." *CellInfo, LLC v. Am. Tower Corp.*, 352 F. Supp. 3d 127, 131 (D. Mass. 2018).

This case is *not*, however, a garden-variety example of forced arbitration previously enforced "due to the mandate of a slim majority of the Supreme Court." *Id.* HelloFresh's efforts here are atypically bolder than most corporations' and go beyond what any court has found to be an enforceable example of forced arbitration. HelloFresh's online terms and conditions undisputedly contained *no* arbitration provision when Ms. Murray was a customer of HelloFresh. HelloFresh argues that because the 2015 terms to which Ms. Murray agreed contained a vague modification clause, the arbitration provision HelloFresh added to its website terms years later, which she never consented to, applies to her. Under this theory, anyone who has ever checked a terms and conditions box while completing an online purchase could be forced, by virtue of an arbitration provision that did not even exist when the purchase was made, to arbitrate *any* future dispute—even one unrelated to the past purchase. But, as HelloFresh acknowledges, arbitration is a matter of contract, and HelloFresh's argument is contrary to fundamental contract principles.

The Court should deny HelloFresh's motion for two reasons. First, no agreement to arbitrate ever formed between Ms. Murray and HelloFresh. Ms. Murray did not accept or agree to any terms and conditions providing for arbitration. There could not have been any "meeting of the minds" between Ms. Murray and Hello Fresh about arbitration as there was *no* arbitration provision at the only time Ms. Murray was a HelloFresh customer. HelloFresh's argument that it can unilaterally add new terms to the contract that the other party never had notice of and opportunity to accept would mean that the alleged contract was illusory and unenforceable.

Second, Ms. Murray's TCPA claims are not covered by the arbitration provision, even if Ms. Murray had agreed to HelloFresh's asserted arbitration provision (she did not). As many courts have recognized, TCPA claims based on telemarketing communications with former customers are not subject to narrow arbitration provisions like the one HelloFresh asserts. Ms. Murray's TCPA claims do not arise from or relate to any purchase or use of HelloFresh products or offerings and thus do not fall within the scope of the asserted arbitration provision. Moreover, if the arbitration provision had been more broadly worded to cover these claims, then it would be unenforceable given the manner in which the contract was allegedly formed. For these reasons, the Court must deny HelloFresh's motion to compel arbitration.

### Facts

HelloFresh is a subscription-based meal-kit delivery service through which customers pay to receive regular weekly orders. *See* Romao Decl. (ECF No. 13) at ¶ 2 & Ex. B; Meininghaus Decl. (ECF No. 12) at ¶ 2 & Ex. B. Once a customer subscribes, HelloFresh sends meal-kits according to a customer order and charges the customer based on the order type. *See id.* Customers can "skip" or "pause" individual deliveries of a subscription plan through HelloFresh's website or app. *See id*. However, if customers want to terminate their relationship

with HelloFresh, they must "deactivate" their subscription. *See* Romao Decl. Ex. B §§ 4.4, 6;

Meininghaus Decl. Ex. B §§ 5, 10.3. Like a magazine or newspaper subscription, once a

customer "deactivates" her HelloFresh subscription, she is no longer a HelloFresh customer and

will no longer receive HelloFresh meal-kit box deliveries. *Id.*

Ms. Murray signed up for a HelloFresh trial subscription in late 2015. Declaration of

Grace Murray filed herewith ("Murray Decl.") ¶ 2; *see also* Compl. (ECF No. 1) ¶ 23. According

to HelloFresh, the company's "checkout" webpage at the time of Ms. Murray's subscription had

a hyperlink to the company's terms and conditions that were in effect as of August 20, 2015

("2015 Terms"), and the website would have required a customer to check a box agreeing to

those terms to place an order. Romao Decl. ¶¶ 4-5. The 2015 Terms, as relevant here, provide

that New York's law and jurisdiction would govern disputes arising out of or connected to the

contract for the purchase of Products. *Id.* Ex. B § 22; *see also id.* § 4.2. The 2015 Terms contain

*no* arbitration provision. *Id.* Ex. B. In fact, an arbitration provision would not be included in

HelloFresh's terms of service until at least February 21, 2017 (more than a year after Murray

ended her relationship with HelloFresh). *See* Meininghaus Decl. ¶ 5. HelloFresh's argument

centers on part of what it calls the "modification provision" of the 2015 Terms. In *full*, it states:

> 21.1 We have the right to revise and amend these terms and conditions from time
> to time to reflect changes in market conditions affecting our business, changes in
> technology, changes in payment methods, changes in relevant laws and regulatory
> requirements and changes in our system's capabilities.
>
> 21.2 You will be subject to the policies and terms and conditions in force at the
> time you order Products from us, unless any change to those policies or these
> terms and conditions is required to be made by law or governmental authority (in
> which case it will apply to orders previously place by you), or if we notify you of
> the change to those policies or these terms and conditions *before* we send you the
> Confirmation (in which case we have the right to assume that you have accepted
> the change to the terms and conditions, unless you notify us to the contrary within
> seven working days of receipt by you of the Products).

3

Romao Decl. Ex. B § 21 (emphasis added).[1]

Ms. Murray terminated her HelloFresh subscription on January 5, 2016. Murray Decl. ¶ 3. She terminated the subscription after receiving one meal-kit from the company. *Id.* The termination was confirmed by HelloFresh moments later via email, with the subject line, "You've cancelled your subscription." *Id.* ¶¶ 4-5; *see also* Compl. ¶¶ 25-26.

According to HelloFresh, it sent Ms. Murray emails for years after she terminated her subscription. Meininghaus Decl. ¶ 7. The emails were promotional in nature—typical marketing "spam" emails attempting to win Ms. Murray's business back. *See id.* Exs. C-D. According to HelloFresh, some emails somewhere contained a hyperlink to its April 2017 terms and conditions ("2017 Terms"). *Id.* ¶ 7, Exs. C-D. The 2017 Terms contained an arbitration provision. *Id.* Ex. B § 24. HelloFresh does not contend that Ms. Murray ever opened or read any terms found in any hyperlink of an email. In fact, Ms. Murray never opened any hyperlinks, nor made any subsequent purchases or received any products from HelloFresh after she terminated her trial subscription. Murray Decl. ¶¶ 7, 9. She took no action to agree to the 2017 Terms that was drafted after she terminated her relationship with HelloFresh. *See id.*

HelloFresh argues that the 2017 Terms, posted more than a year after Ms. Murray canceled her subscription, apply here and preclude Ms. Murray's claims in this forum. *See* HelloFresh Br. at 4-6, 10-11. The 2017 Terms provide for arbitration of:

> ANY CLAIM, DISPUTE, OR CONTROVERSY … BETWEEN YOU AND HELLOFRESH **ARISING FROM OR RELATING IN ANY WAY TO YOUR PURCHASE OR USE OF PRODUCTS OR OFFERINGS** THROUGH THE SITE AND/OR APP[.]

---

[1] The 2015 Terms also contain an "Entire Agreement" provision stating that, "These terms and conditions and any document expressly referred to in them constitute the whole agreement between us . . . ." Romao Decl. Ex. B. § 20.1. Ambiguity from the contradictory nature of sections 20 and 21 should be construed against the drafter of the terms, HelloFresh.

Meininghaus Decl. Ex. B § 24.1 (emphasis added). "Offerings" is defined as "the Site, App, Products, Content, Social Media, Gift Cards, and Vouchers." *Id.* Ex. B at 1.

Years after Ms. Murray's termination of her subscription with HelloFresh, Ms. Murray received repeated telemarketing phone calls from HelloFresh. Murray Decl. ¶¶ 10, 14; Compl. ¶¶ 26-27. The calls were "telemarketing in purpose, designed to solicit Ms. Murray to purchase HelloFresh services again." Compl. ¶ 27; *see also* Murray Decl. ¶ 11.[2] Ms. Murray's phone number is listed on the National Do Not Call Registry. Murray Decl. ¶ 15; Compl. ¶ 21. Ms. Murray answered HelloFresh's telemarketing calls, declined HelloFresh's requests to purchase HelloFresh products, and asked HelloFresh to stop calling her. Murray Decl. ¶¶12-13; Compl. ¶¶ 28-29. Yet HelloFresh continued to violate her privacy interest by repeatedly calling her. Murray Decl. ¶¶ 14; Compl. ¶¶ 30-31. Ms. Murray subsequently filed this suit, claiming violations of the TCPA. HelloFresh now seeks to enforce an arbitration provision that was never part of Ms. Murray's contractual relationship.

## Argument

HelloFresh cannot compel arbitration because no valid arbitration agreement applies to Plaintiff's TCPA claims. The United States Supreme Court has made clear: "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "[A]rbitration is a matter of contract and a party cannot be required to submit to

---

[2] A HelloFresh employee characterizes such telemarketing calls as an attempt "to inquire about Plaintiff's [long past] meal-kit subscriptions ordered from HelloFresh, the quality of goods and services provided by HelloFresh." Fiaschi Decl. (ECF No. 14) ¶ 4. Yet in the very same line, the employee also acknowledges that the calls were "promotional offerings." *Id.* There is no serious debate that the calls were made for the purpose of promoting a new purchase of HelloFresh goods and services. And in any event, the HelloFresh employee (unlike Ms. Murray) was not a party to any of these phone calls, because those calls were made by a HelloFresh vendor. *Id.* ¶ 3 ("HelloFresh contracts with vendors to make calls . . . .").

arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). A "gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 84 (citations omitted). "Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id.* (citations omitted). "The burden of making that showing lies on the party seeking to compel arbitration." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 60 (1st Cir. 2018).

As this Court has previously stated, "Congress enacted the Federal Arbitration Act 'to ensure that courts would honor the contractual agreements of parties who choose to resolve their disputes by means of the informal arbitration procedure.'" *CellInfo,* 352 F. Supp. 3d at 132 (quotation omitted). Motions to compel arbitration pursuant to the Federal Arbitration Act ("FAA") thus require a multipart inquiry by the court. "A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003). Here, HelloFresh's attempt to compel arbitration fails because the answer to these questions is "no." The failure of even one of these threshold requirements obliges denial of HelloFresh's motion. *See, e.g.*, *Amary v. JPMorgan Chase & Co.*, Civ. No. 12-10777, 2012 WL 6045980, at *5 (D. Mass. Oct. 18, 2012) (recommending denial of motion to compel arbitration because of questions as to formation and existence of valid agreement to arbitrate and whether if it did exist it would govern dispute at issue), *recommendation adopted by* 2012 U.S. Dist. LEXIS 172762 (D. Mass. Nov. 30, 2012).

## I.     No agreement to arbitrate formed between Ms. Murray and HelloFresh.

When deciding whether the parties agreed to arbitrate a certain matter, courts "should apply ordinary state-law principles that govern formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "In order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Arnaud v. Doctor's Assocs.,* No. 18-cv-3703, 2019 WL 4279268, at *5 (E.D.N.Y. Sept. 10, 2019) (internal quotation marks omitted) (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019)); *see also Freitas v. JPMorgan Chase Bank, N.A.*, No. 15-cv-13493-ADB, 2017 WL 4102579, at *3 (D. Mass. Sept. 15, 2017) ("It is well established in Massachusetts that the essential elements of a contract are an offer, acceptance, and an exchange of consideration or meeting of the minds." (citations omitted)).[3] Especially in the context of online consumer adhesion contracts, "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers <u>are essential</u> if electronic bargaining is to have integrity and credibility." *Cullinane*, 893 F.3d at 61 (alteration in original) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002)).

### A.     Ms. Murray did not agree to binding arbitration when she completed a purchase from HelloFresh in 2015.

There is no dispute that the HelloFresh terms and conditions in existence at the only time

---

[3] Just because HelloFresh's terms reference New York law does not mean New York law applies to the issue of whether a contract requiring arbitration was formed between HelloFresh and Ms. Murray. "Applying the choice-of-law clause [of an asserted contract] to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). Rather, either the law of where a plaintiff was located and enrolled in an online service or the law of where the online business is located could apply, and which should apply would require a complex choice-of-law analysis. *Id.* The law of both Massachusetts (where Ms. Murray is located) and New York (where HelloFresh is based) is similar in terms of fundamental contract law principles regarding formation of contracts, however. Thus, as detailed herein no agreement to arbitrate exists no matter which law applies.

Ms. Murray was a HelloFresh customer did not contain an arbitration provision. *See* HelloFresh Br. at 9-11; *see also* Romao Decl. Ex. B. HelloFresh's online terms and conditions did not include any arbitration provision until at least sometime in 2017, well over a year after Ms. Murray made her only HelloFresh purchase and canceled her subscription. *See* HelloFresh Br. at 4, 10; Meininghaus Decl. ¶ 5; Murray Decl. ¶¶ 3-5, 9. Thus, HelloFresh cannot show a meeting of the minds, valid acceptance, or formation of a contract containing any arbitration provision.

HelloFresh argues that because Ms. Murray "agreed to the 2015 Terms" that contained a statement indicating that HelloFresh "ha[s] the right to revise and amend these terms and conditions," she also agreed to arbitration provisions posted years later by HelloFresh on its website. HelloFresh Br. at 10-11. HelloFresh is mistaken; the law does not support its claim.

### B. The modification clause in HelloFresh's 2015 Terms does not allow HelloFresh to subject Ms. Murray to arbitration.

HelloFresh's argument is contrary to fundamental principles of contract. Unsurprisingly, then, HelloFresh had cited no case law to support its claim that an arbitration provision posted on its website in 2017 can be deemed part of a contract entered into by the parties in 2015. Further, HelloFresh cannot support that Ms. Murray ever had proper notice of the arbitration provision or that her conduct in 2017 or later constituted acceptance of a revised contract offer that included an arbitration provision. A purported agreement to contract terms that admittedly did not exist at the time of consent or acceptance of the contract offer cannot evince a valid meeting of the minds or knowing acceptance of *those terms*. *See Freitas*, 2017 WL 4102579, at *3 ("The parties must give their mutual assent by having 'a meeting of the minds' on the same proposition on the same terms at the same time." (citation omitted)); *Starke*, 913 F.3d at 295 (law "still require[s] that the offeree be put on notice of the existence of additional contract terms before it can be said that he has assented to them"); *Specht*, 306 F.3d at 29-30 ("a consumer's clicking on a . . . button

does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the , , , button would signify assent to those terms"); *Schnabel*, 697 F.3d at 124 (explaining that no case law has nullified the basic principle of contract law requiring "that a consumer be on notice of the existence of a term before he or she can be legally held to have assented to it"). Ms. Murray did not accept any arbitration provision by her actions in 2015 because a HelloFresh arbitration provision undisputedly did not exist at that time.

In addition, an alleged contract whose terms can change at a later time based on unilateral action of one party is a text-book definition of an illusory contract. *See Nat'l Fed'n of the Blind v. Container Store, Inc.*, 904 F.3d 70, 86-87 (1st Cir. 2018); *see also McNamara v. S.I. Logistics, Inc.*, No. 17-cv-12523-ADB, 2018 WL 6573125, at *3-4 (D. Mass. Dec. 13, 2018) ("[c]ourts have applied similar reasoning to find arbitration agreements illusory under Massachusetts law"; denying motion to compel arbitration). HelloFresh's contention that it can enforce an arbitration provision that did not exist until 2017 against someone who only agreed to a contract without such a provision in 2015 would mean the later-added provision was illusory and invalid.[4]

Moreover, under the language of HelloFresh's own modification provision, in order for any changed terms and conditions not required by law to apply, HelloFresh had to notify Ms. Murray of the change *before* sending her email confirmation of a product order. Romao Decl.

---

[4] No case, including the ones cited by HelloFresh at pages 19-20 of its brief, supports HelloFresh's contention that a contract can be unilaterally "modified" by the addition of a material term that the other party never had notice of and to which it did not assent. The cited Second Circuit case merely stands for the unremarkable proposition that the fact a contract term gives a party discretion in administering the contract in accordance with specified conditions stated in the contract does not render the entire contract illusory, as there is an implied duty to administer the contract in accordance with the reasonable expectation of the parties. *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83 (2d Cir. 2013); *see also Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 101-08 (E.D.N.Y. 2015) (holding explicit arbitration provision of (second) contract plaintiff agreed to was not illusory merely because contract also contained general modification clause; any improper modification (which would be illusory) could be severed).

Ex. B § 21.2. Basic contract law requires that any offer, counteroffer, or proposed modified

terms would still have to be accepted by the other party after receiving notice of the new terms.

HelloFresh's 2015 Terms implicitly recognize this requirement; they state that the conduct of

receiving a HelloFresh product order Confirmation after receiving notice of changed terms and

not notifying HelloFresh of disagreement to the new terms "within seven working days of receipt

by you of the Products" may be "assume[d]" to be "accept[ance]" by the consumer of the new

terms applying to those products. *Id.*; *see also id.* § 4.2 ("The Contract will relate only to those

Products whose dispatch was confirmed in the Confirmation.").

    Yet, even though the 2015 Terms themselves recognize the customer must accept (at least

by conduct) any revised terms after notice, HelloFresh has alleged no conduct by Ms. Murray

here that can be deemed acceptance of arbitration. Moreover, as discussed in section II *infra*, the

TCPA claim asserted here does not arise from or relate to her 2015 product purchase anyway.

HelloFresh makes no assertion that it sent notification of new terms to Ms. Murray *before*

confirming and dispatching any ordered meal-kit to Ms. Murray. And HelloFresh does not allege

that it notified Ms. Murray about arbitration at any time before she canceled her subscription

with HelloFresh. To the contrary, HelloFresh acknowledges the arbitration provision that it

asserts should govern this dispute was not added to its online terms and conditions until 2017,

more than a year after Ms. Murray's last contact with HelloFresh and after it acknowledged her

subscription cancellation. *See* HelloFresh Br. at 4-5, 10-11; Murray Decl. ¶¶ 3-5, 9.

    Even if the 2015 Terms had more broadly stated that HelloFresh reserved, for *any* reason,

the "right to change those terms *at any time*, this did **not** necessarily bind [plaintiff] to any

change of terms without notice" and subsequent "assent to" or acceptance of new terms. *Nicosia*

*v. Amazon.com, Inc.*, 834 F.3d 220, 235 (2d Cir. 2016) (emphasis added) (not granting motion to

compel arbitration because of insufficient evidence and factual disputes as to whether plaintiff

consumer had adequate notice of and subsequently accepted arbitration provision of website

terms and conditions that did not exist when he created account with vendor but did when he

placed later order with them); *see also Schnabel*, 697 F.3d at 123 (denying arbitration because no

matter when initial contract was formed, there was never any *acceptance* by plaintiffs of any

later offered terms regarding arbitration); *Starke*, 913 F.3d at 289-97 (affirming denial of motion

to compel arbitration because consumer never had sufficient notice of any arbitration provision

that only appeared in a post-sale email about terms and conditions and "therefore did not

manifest assent" to it). The later 2017 Terms on HelloFresh's website direct that a consumer

"tick the checkbox in the shopping cart to accept these terms and conditions." Meininghaus Decl.

Ex. B at 1. HelloFresh has provided no evidence that Ms. Murray ever ticked such a checkbox

except in 2015, before HelloFresh's website contained an arbitration provision. Ms. Murray

made no HelloFresh product purchase in 2017 or after and took no actions on HelloFresh's

website or elsewhere accepting the HelloFresh 2017 Terms.

Indeed, Ms. Murray did not do anything after HelloFresh posted its 2017 Terms that

constitutes assent to new terms or acceptance of an offer to arbitrate. She was no longer a

HelloFresh customer by 2017 and did not continue to receive or pay for any HelloFresh products

at that time. Nor did Ms. Murray have actual notice of the arbitration provision. The emails

HelloFresh sent to a former customer's email address could not constitute proper inquiry notice

of an offer for a new contract regarding arbitration disclosed in a webpage only available through

a hyperlink in the email. *See Schnabel*, 697 F.3d at 123 (holding "an unsolicited email from an

online consumer business" could not put recipients on inquiry notice of contract terms even

explicitly contained in the email itself); *Starke*, 913 F.3d at 296 ("The fact that Starke received

11

emails with the same inconspicuous hyperlink on more than one occasion does not lead us to conclude that Starke had either actual or inquiry notice of the Post-Sale T&C."). Ms. Murray was no longer a customer, and so those emails were nothing more than spam. In short, Ms. Murray never had any meeting of the minds with HelloFresh about arbitration and did nothing to accept, by conduct or otherwise, any offer by HelloFresh to arbitrate.

## II.   Ms. Murray's TCPA claims are not within the scope of HelloFresh's asserted arbitration provision.

*Even if* Ms. Murray had validly accepted HelloFresh's 2017 Terms containing an arbitration provision, the TCPA claims she asserts here do not fall within the scope of that provision. HelloFresh's arbitration provision only provides for arbitration of claims or disputes between the customer and HelloFresh "ARISING FROM OR RELATING IN ANY WAY TO [THE CUSTOMER'S] PURCHASE OR USE OF PRODUCTS OR OFFERINGS THROUGH THE SITE AND/OR APP." HelloFresh Br. at 5 (quoting Meininghaus Decl. ¶ Ex. B). This provision is therefore not nearly as broad as HelloFresh would have the Court believe and is a far cry from other arbitration clauses that call for arbitration of "all claims" or "any dispute" between the parties. The arbitration provision here is too narrow to encompass HelloFresh's actions in this case—that is, calling Ms. Murray in violation of the TCPA after she had terminated her contractual relationship with HelloFresh.

This case is strikingly similar to *Borecki v. Raymours Furniture Co.*, No. 17-cv-1188, 2017 WL 5953172 (S.D.N.Y. Nov. 28, 2017), another TCPA action in which the defendant attempted to invoke an arbitration clause to defeat the plaintiff's class claims. As here, the arbitration provision in *Borecki* explicitly referred to the goods/services purchased from the company trying to compel arbitration. *Id.* at *2 (discussing limited nature of arbitration provision regarding "any claim, dispute or controversy between you and us that in any way arises from or

12

relates to the goods and/or services you have purchased or are purchasing from us . . ."). And as here, the asserted arbitration provision contained this limiting language *after* the "broad" "any claim, dispute or controversy . . . that in any way arises from or relates to" language, leading the court to deem the complete arbitration clause "narrow." *Id.* ("Thus, the arbitration clause, as the magistrate judge concluded, is narrow."); *Borecki v. Raymours Furniture Co.*, No. 17-cv-1188, 2017 WL 5900288, at *3-4 (S.D.N.Y. June 21, 2017) (magistrate recommendation).

Indeed, in *Borecki* and here, the relevant arbitration provision is not worded as broadly as the provisions in the agreements in cases cited by HelloFresh. For example, HelloFresh's arbitration provision does not contain language regarding every claim possibly associated with the relationship between the customer and HelloFresh or any claim related to her account as in the *Carr*, *Boule*, and *Lozada* cases HelloFresh cites. *See* HelloFresh Br. at 12-13 (citing *Carr v. Citibank, N.A.*, No. 15-cv-6993, 2015 WL 9598797, at *1 (S.D.N.Y. Dec. 23, 2015) (mandatory, binding arbitration applies to "any claim, dispute, or controversy between Carr and Citibank," including "all claims relating to . . . the parties' relationship"); *Boule v. Credit One Bank*, No. 15-cv-8562, 2016 WL 3015251, at *1 (S.D.N.Y. May 11, 2016) (contract required "any controversy or dispute between you and us . . . be submitted to mandatory, binding arbitration"); *Lozada v. Progressive Leasing d/b/a Prog Leasing LLC*, No. 15-cv-2812, 2016 WL 3620756, at *1 (E.D.N.Y. June 28, 2016) (similar)). The TCPA claims asserted here thus do not fall within the scope of HelloFresh's arbitration provision. *See Borecki*, 2017 WL 5900288, at *4-5 (magistrate's recommendation to deny motion to compel arbitration distinguishing cases with "broader" arbitration provisions and where the calls made were related to the plaintiff's open credit card or lease accounts with the defendant (including the *Lozada, Boule,* and *Carr* cases)); *Borecki*, 2017 WL 5953172, at *3-4 (adopting magistrate's recommendation because the pleaded

13

TCPA claim was beyond the scope of the arbitration provision under New York contract law).[5]

Instead, as in *Borecki*, Ms. Murray's TCPA claims arise from and relate to improper telemarketing contacts Ms. Murray received in an attempt to ***win her back as a customer***; the calls did not relate to a previous consumer purchase transaction with the defendant that had already been completed years before the calls at issue. *See Borecki,* 2017 WL 5900288, at *4-5; Murray Decl. ¶¶ 3-5, 9-15. Ms. Murray's TCPA claims (and those of other proposed class members) simply do not arise from or relate to any purchase or use of HelloFresh's products or offerings through the HelloFresh website or app. Instead, Plaintiff's TCPA claims center on her rights under the TCPA to be free from nuisance phone calls that violate the National Do Not Call Registry. These TCPA claims are thus not subject to arbitration even if Ms. Murray had accepted HelloFresh's 2017 arbitration agreement that did not exist at the time when she was a HelloFresh customer.

Appellate courts across the country have repeatedly held in recent years that TCPA claims brought by former customers for general telemarketing calls made by a defendant do not arise under a service/product agreement with that defendant and thus do not fall within the scope of even broadly worded arbitration provisions. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 5, 7-9 (1st Cir. 2019) (affirming denial of motion to compel arbitration of TCPA claim by former customer); *Gamble v. New Eng. Auto Fin., Inc.*, 735 Fed. App'x 664 (11th Cir. 2018) (same); *Stevens-Bratton v. Trugreen, Inc.*, 675 Fed. App'x 563 (6th Cir. 2017) (reversing judgment compelling arbitration of TCPA claim by former customer); *see also Holcombe v. DIRECTV, LLC*, 159 F. Supp. 3d 1337 (N.D. Ga. 2016) (denying motion to compel arbitration of TCPA claim by former customer).

---

[5] Ms. Murray does not dispute that *if* a contract as to the 2017 Terms had been formed, then it would be subject to New York law given section 25 of the 2017 Terms.

These courts have recognized that even broadly worded arbitration agreements cannot transcend the larger context of the underlying contract containing the arbitration clause. Arbitration provisions entered into as part of purchasing a specific product or service do not extend to TCPA claims based on telemarketing calls by the same company in which that company attempts to sell new or additional products or services or create a new customer relationship. *See id.* Put simply, HelloFresh's telemarketing calls do not arise from or relate to Ms. Murray's or other proposed class members' past purchase or use of products or offerings through the HelloFresh website or app. *See, e.g., Gamble,* 735 Fed. App'x at 666 (TCPA claim arises from rights created under the TCPA, not from any right implicated by the parties' contractual relationship). Indeed, as indicated in the Complaint, Ms. Murray terminated her subscription agreement with HelloFresh years before she received the calls that form the basis for the complaint. Compl. ¶¶ 24-27. The calls to Ms. Murray were not about her past purchase or an issue of non-payment regarding that order but rather were general telemarketing calls to induce her to buy new products from HelloFresh in the future or to "win her back" as a customer. *See id.* ¶ 27 ("The calls were telemarketing in purpose, designed to solicit Ms. Murray to purchase HelloFresh services again."); Murray Decl. ¶¶ 10-11; *see also* HelloFresh Br. at 2 ("vendors placed calls to Plaintiff" for "promotional offerings").

The TCPA claims here are therefore akin to the TCPA claims in cases like *Breda*, *Borecki*, *Gamble*, and *Stevens-Bratton.* They are not like the claims in *Moore v. T-Mobile USA Inc.*, No. 10-CV-527, 2012 WL 13036858 (E.D.N.Y. Sept. 28, 2012), *aff'd* 548 F. App'x 686 (2d Cir. 2013), and *Velez v. Credit One Bank*, 2016 WL 324963 (E.D.N.Y. Jan. 25, 2016), where debt-collection calls for money owed to the defendant pursuant to a contact providing for arbitration were the subject of the TCPA claim. TCPA claims regarding improper telemarking

calls made after a do-not-call request or to a number on the national do-not-call registry to offer promotions in order to win back a former customer, like those pleaded here, arise from the improper calls made to the plaintiff; they do not have their "real source in the contract" regarding any past purchases. *Stevens-Bratton*, 675 Fed. App'x at 567-68. TCPA claims regarding such win back calls are accordingly not subject to arbitration. *Id.* at 567 (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991)); *see also Breda*, 934 F.3d at *7-8; *Gamble*, 735 Fed. App'x at 667. In contrast, in cases like *Velez*, it was undisputed the calls were made to "collect on [Plaintiff's] delinquent account" and thus the dispute arose out of or related to the credit card account contract between plaintiff and defendant. *Velez*, 2016 WL 324963, at *6; *see also Moore*, 2012 WL 130336858 at *3-4, *6-7 (plaintiff alleged defendant made calls to collect debt owed by plaintiff to defendant pursuant to mobile services contract that plaintiff admitted he signed that contained arbitration provision); *McCormick v. Citibank, NA*, No. 15-CV-46, 2016 WL 107911, at *3 (W.D.N.Y. Jan. 8, 2016) (plaintiff alleged defendant called him to attempt to collect the unpaid balance on his credit card account with defendant); *Cyganiewicz v. Sallie Mae, Inc.*, No. 13-40068, 2013 WL 6990924, at *1-2 (D. Mass. Oct. 24, 2013) (plaintiff alleged defendant made calls to collect outstanding balance on loan from defendant and defendant compelled arbitration pursuant to broad arbitration provision of the loan agreement).

Ms. Murray does not contend the TCPA overrides the FAA or that TCPA claims can never be arbitrable. But, as multiple appellate courts have recognized, the type of TCPA claims asserted here based on improper "win back" calls to former customers simply do not arise out of or relate to a past product/service contract and thus arbitration of such claims cannot be compelled. As the Supreme Court has stated, "the object of an arbitration clause is to implement a contract, not to transcend it." *Litton*, 501 U.S. at 205. Even when a "broadly" worded

arbitration clause is asserted, a court should "review[ ] the allegations underlying the dispute and . . . ask[ ] whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. Claims that present no question involving construction of the contract, and no questions in respect of the parties' right and obligations under it, are beyond the scope of the arbitration agreement." *Specht*, 306 F.3d at 36 (internal quotation omitted).

HelloFresh "could have violated the TCPA, and [plaintiff] could have brought [this] lawsuit against [defendant] without there ever having been a contract . . . between the two parties." *Gamble*, 735 Fed. App'x at 667; *see also Rahmany v. T-Mobile USA Inc.,* 717 Fed. App'x 752, 753 (9th Cir. 2018) (reversing grant of motion to compel arbitration of TCPA claims because the TCPA claims at issue "do not rely on the terms of the [Product/Service Agreement containing asserted arbitration provision]" nor allege misconduct "founded in or intimately connected with the obligations of [that Product/Service Agreement]"). The TCPA claims pleaded in this litigation are therefore not within the scope of HelloFresh's asserted arbitration provision. The real source of these claims is HelloFresh's improper telemarketing calls to an ex-customer— not a customer purchase completed years earlier.[6]

---

[6] The class action waiver also cannot transcend the agreement and apply to this dispute that does not have its real source in the asserted contract and arose only after Ms. Murray's termination of her customer relationship with HelloFresh. The HelloFresh class action waiver is part of its inapplicable arbitration provisions. Meininghaus Decl. Ex. B at § 24. "Because Plaintiff's class claims . . . are beyond the scope of the . . . arbitration agreement, the class action waiver cannot obligate [her] to pursue [her] claims individually." *Robinson v. Virginia College, LLC*, No. 2:19-cv-00064, 2019 WL 1903405, at *7 (N.D. Ala. Apr. 29, 2019) (denying motion to compel arbitration and to strike class action allegations), *aff'd by* 788 Fed. Appx. 697, 701 (11th Cir. 2019) ("Because Robinson's complaint is not subject to arbitration under the agreement, its class action waiver does not govern this dispute"); *see also Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 331 (E.D. Tex. 2019) ("the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply *if* a dispute is arbitrated"). A class action waiver cannot extend more broadly than the arbitration provision and be valid. *See Meyer v. Kalanick*, 185 F. Supp. 3d 448, 453-58 (S.D.N.Y. 2016) (holding class action waiver in Uber's online terms and conditions should not

**III.    If HelloFresh had worded its arbitration provision broadly enough to apply to the TCPA claims at issue, it would be invalid and unenforceable.**

HelloFresh limited the arbitration provision in its 2017 Terms to disputes arising from or relating to purchased products for good reason. The arbitration provision is contained in its adhesive terms and conditions to which HelloFresh contends a consumer must agree in order to receive its products.[7] If the adhesive arbitration provision were untethered to the context of the consumer product purchase of the larger adhesive contract, then it would be unenforceable.

Because arbitration is a matter of contract, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)); *see also* FAA § 2 (arbitration clauses in commercial contracts are "valid, irrevocable, and enforceable, *save upon such grounds as exist in equity for the revocation of any contract*" (emphasis added)). "Courts do not enforce terms of agreements that are unconscionable." *Berkson*, 97 F. Supp. 3d at 391 (citation omitted). "[C]ourts evaluate procedural and substantive unconscionability on a 'sliding scale.'" *Id.*; *see also Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324,

---

be read independently of arbitration agreement and if it were it would be unenforceable given the context of adhesion contract of consumer purchase); *infra* § III.

[7] The 2017 Terms contain language indicating potential application even to anyone who may "use, access, or visit" the HelloFresh website or app. As noted earlier, though, the Terms also direct that a consumer or website user must "tick the checkbox in the shopping cart to accept these terms and conditions." Meininghaus Decl. Ex. B. Binding anyone who merely accesses or visits a website to a contract including mandatory arbitration and waiver of 7th Amendment rights would be unconscionable and would not comport with fundamental contract principles such as meeting of the minds, manifestation of assent, informed acceptance, or consideration. *See generally* section I *supra*; *see also Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22 (2d Cir. 2010) (considering New York contract law and affirming denial of motion to compel arbitration of suit brought by consumer because no evidence of valid acceptance of online terms and conditions purporting to bind any website user); *Berkson v. GOGO LLC,* 97 F. Supp. 3d 359, 396 (E.D.N.Y. 2015) ("[C]ourts generally have enforced browsewrap terms only against knowledgeable accessors, such as corporations, not against individuals.").

341 (W.D.N.Y. 2017). "New York law allows for a finding of unconscionability . . . even where there was no procedural unconscionability." *Id.* at 342 (citation omitted).

If the arbitration provision of HelloFresh's adhesive website agreement were to apply broadly to any possible future action by the consumer against HelloFresh, including TCPA claims like those pleaded here, then it would "clearly be unconscionable" or otherwise unenforceable. *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 503 (E.D.N.Y. 2016) (citing *In re Jiffy Lube Int'l, Inc. Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012); *Stein v. Steinkamp*, 318 F.3d 775, 777-778 (7th Cir. 2003))).[8] Reading an arbitration provision in HelloFresh's adhesive website terms and conditions to bar a class action on TCPA claims based on after-arising actions unrelated to a prior website purchase would be manifestly unreasonable and, indeed, further evidence that there was no meeting of the minds or formation of a valid agreement. *See id.* at 504-05 (applying New York contract law and denying motion to compel arbitration of putative class action under the TCPA despite assertion of agreement of arbitration provision purporting to apply to any dispute or claim between the parties). After all,

> no reasonable person would think that checking a box accepting the 'terms and conditions' necessary to obtain a [consumer product/service] would obligate them to arbitrate literally every possible dispute he or she might have with the [product/service] provider. . . . Rather a reasonable person would be expressing, at most, an intent to arbitrate disputes connected in some way to the [product/service] agreement.

*Id.* at 504. "Whether framed in terms of unconscionability or contract formation, the end result is

---

[8] *See also Mey v. DirecTV, LLC*, No. 5:17-CV-179, 2018 WL 7823097, at *3-6 (N.D.W.V. Apr. 25, 2018) (denying motion to compel arbitration of TCPA claim by construing scope of arbitration provision to avoid unconscionable results and thus finding TCPA claim outside its scope); *Revitch v. DirecTV, LLC*, No. 18-cv-01127, 2018 WL 4030550, at *13-17 (C.D. Cal. Aug. 23, 2018) (similar); *Esparza v. SmartPay Leasing, Inc*., No. C17-03421, 2017 WL 4390182, at *2-3 (N.D. Cal. Oct. 3, 2017) (similar), *aff'd* 765 Fed. App'x 218 (9th Cir. 2019); *Hearn v. Comcast Cable Commc'ns, LLC*, 415 F. Supp. 3d 1155, 1161-66 (N.D. Ga. 2019) (an arbitration provision in a consumer product/services agreement purporting to extend further than to claims arising out of that contract does not comport with FAA and would be unenforceable).

the same: [such a broad] arbitration clause is not enforce[able]." *Id.* at 504-05; *see also Berkson*, 97 F. Supp. 3d at 404-05 (denying motion to compel arbitration based on online "terms of use" because terms going beyond "the basic internet contract for a sale and payment . . . are not enforceable against ordinary consumers who are unlikely to be aware of them").

In short, numerous courts have recognized that provisions in an online adhesive consumer contract—even those explicitly within the terms posted at the time the consumer checked a box agreeing to them in connection with a purchase—are not enforceable to the extent they purport to govern disputes unrelated to that product purchase. HelloFresh's bizarre contentions here—that an arbitration provision, inquiry notice of it, or an opportunity to opt-out from it need not even exist at the time of purchase yet can still govern a consumer if added years later—not only violate basic principles of contract formation, but if followed would involve additional elements of procedural unconscionability that require the Court to deem the provision unenforceable. Indeed, given terms *not* providing for arbitration were only shown or available to the consumer at the time of her transaction with HelloFresh, the contract could also be unenforceable for fraud in the inducement or execution. *See* HelloFresh Br. at 15-16.

Here, HelloFresh wrote clear and unambiguous language limiting its arbitration provision to disputes arising from or relating to consumers' purchases or use of products or offerings through its website or app. Broader language—particularly to the extent it purported to extend to claims not related to the underlying consumer purchase contract, such as those at issue here— would have created formation and unenforceability issues.

### Conclusion

HelloFresh's arbitration provision does not govern Ms. Murray or her TCPA claims. The Court should deny Defendant's Motion to Compel Arbitration in its entirety.

Respectfully submitted,

Dated:  February 28, 2020

By: */s/ Anthony I. Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

TURKE & STRAUSS LLP
Samuel J. Strauss
936 N. 34th Street, Suite 300
Seattle, WA 98103
608-237-1775
Sam@turkestrauss.com
*Pro Hac Vice*

ROBINS KAPLAN LLP
Brenda L. Joly (MA 657255; MN 386791)
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
612-349-8500
bjoly@robinskaplan.com

*Of counsel (Not formally appearing at this time*
*as pro hac vice applications have not been filed):*
ROBINS KAPLAN LLP
Stacey P. Slaughter
Michael D. Reif
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
612-349-8500
slaughter@robinskaplan.com
mreif@robinskaplan.com

*Attorneys for Plaintiff and proposed class*

## CERTIFICATE OF SERVICE

I, hereby certify that on February 28, 2020, I served the foregoing through the Court's CM/ECF system, which sent notice to all counsel of record.

/s/ *Anthony I. Paronich*
Anthony Paronich