```
 1                UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS (Boston)

 3                           No. 1:19-cv-12608-WGY

 4

 5   GRACE MURRAY,
             Plaintiff
 6

 7
     vs.
 8

 9

10   GROCERY DELIVERY E-SERVICES USA, INC.,
             Defendant
11

12
                           *********
13

14        For Zoom Video Conference Hearing Before:
                   Judge William G. Young
15

16             Motion to Compel Arbitration

17
                     United States District Court
18                   District of Massachusetts (Boston)
                     One Courthouse Way
19                   Boston, Massachusetts 02210
                     Wednesday, April 22, 2020
20

21                         *******

22
              REPORTER: RICHARD H. ROMANOW, RPR
23                 Official Court Reporter
                 United States District Court
24     One Courthouse Way, Room 5510, Boston, MA 02210
                   bulldog@richromanow.com
25
```

```
 1                    A P P E A R A N C E S

 2

 3   STACEY SLAUGHTER, ESQ.
        Robins, Kaplan, Miller & Ciresi, LLP
 4      800 LaSalle Avenue, Suite 2800
        Minneapolis, MN 55402
 5      (612) 349-8554
        Email: Sslaughter@robinskaplan.com
 6   and
     ANTHONY I. PARONICH, ESQ.
 7      Paronich Law, P.C.
        350 Lincoln Street, Suite 2400
 8      Hingham, MA 02043
        (508) 221-1510
 9      Email: Anthony@paronichlaw.com
        For Plaintiff
10

11   SHANNON Z. PETERSEN, ESQ.
        Sheppard Mullin Richter & Hampton, LLP
12      12275 El Camino Real, Suite 200
        San Diego, CA 92130-4092
13      (858) 720-8900
        Email: Spetersen@sheppardmullin.com
14      For Defendant

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            P R O C E E D I N G S
 2            (Begins, 10:15 a.m.)
 3            THE CLERK:  Now hearing Civil Matter 19-12608,
 4   Murray versus Grocery Delivery.
 5            THE COURT:  Good morning, counsel, welcome to this
 6   video motion hearing.  Let me just explain the protocol
 7   as we begin.
 8            The proceeding is "hosted," if you will, by our
 9   Courtroom Deputy Clerk, Jenn Gaudet.  On the line is the
10   Official Court Reporter, Rich Romanow, and the
11   transcript is being maintained in the normal fashion.  I
12   also have a law clerk on the line.
13            As this is a public proceeding, it is open to the
14   press and the public.  Let me say, should any members of
15   the press or public be present for this hearing, that
16   the rules of court remain in full force and effect,
17   there will be no recording, retransmission, or broadcast
18   of this proceeding.
19            Now, as is usual in a motion hearing, counsel will
20   understand I've read the briefs, I believe I'm ready for
21   oral argument, and, um, because we have a full day I
22   should think no more than 10 minutes a side would be
23   appropriate.
24            With that said, let's turn to counsel and have
25   them introduce themselves.  Would you please introduce
```

1   yourself and who you represent.  And then we'll get to
2   the argument.
3       MS. SLAUGHTER:  Thank you, your Honor.  My name is
4   Stacey Slaughter of the Robins Kaplan law firm.  I
5   represent the plaintiff, Ms. Murray, who is a
6   Massachusetts resident, and on behalf of the proposed
7   class of plaintiffs, who are former Hello Fresh
8   customers that are also on the national do-not call
9   registry.
10      THE COURT:  Thank you.
11      MR. PARONICH:  Good morning, your Honor, this is
12  Dan Paronich, and I also represent the plaintiff and
13  proposed class.
14      THE COURT:  Thank you.
15      And for the defense?
16      (Silence.)
17      THE COURT:  Well do we have anyone here for the
18  defense?
19      THE CLERK:  Yes, he's speaking, Judge, but we
20  can't hear him.
21      (Silence.)
22      THE CLERK:  Attorney Petersen, we can't hear you
23  when you speak.  I heard you earlier.  Is there
24  something you've changed?
25      (Silence.)

```
 1         THE CLERK:  It's saying you're connecting to the
 2   audio now.  So hopefully.
 3         (Pause.)
 4         MR. PETERSEN:  Oh, all right.  Wonderful.  I
 5   apologize.  I'm not sure what happened there, I could be
 6   heard originally and then for some reason I could not.
 7         I am Shannon Petersen -- Shannon Petersen on
 8   behalf of the defendant, Hello Fresh.
 9         THE COURT:  And I thank you, Mr. Petersen.
10         I think we're ready now to begin.  This is your
11   motion and I will hear you, sir.
12         MR. PETERSEN:  Thank you, your Honor.
13         So to keep it brief, at least initially, and not
14   to repeat the papers too much, we have three arguments
15   of course on this motion, we believe that your Honor
16   should grant the motion to compel arbitration and
17   enforce the class action labor for three reasons.
18         First, the plaintiff agreed to arbitrate her
19   claims.  Second, the arbitration --
20         THE COURT:  Excuse me.  Isn't that the key issue,
21   um, whether there was in fact an agreement to arbitrate?
22   And why don't you develop that issue.
23         MR. PETERSEN:  Right.  So let's begin in 2015.  I
24   don't believe there's any dispute that there was an
25   agreement to the terms in 2015.  The evidence before
```

1  your Honor is that plaintiff visited the website, she
2  filled out her information, she provided her phone
3  number, she ordered the product, she clicked the box,
4  and in clicking the box she specifically agreed to the
5  terms then in effect, and those were the 2015 terms, and
6  they admittedly did not include an arbitration
7  provision, however they did include a unilateral
8  modification provision that allowed modification under
9  certain limited circumstances, including the
10 circumstance in the event there are changes in law.
11     The evidence before your Honor is that due to
12 changes in law -- specifically due to U.S. Supreme Court
13 decisions having to do with an enforceability of
14 arbitration provisions and class action waivers, that
15 the folks at Hello Fresh decided to update their terms
16 in early 2017 to include an arbitration provision.  And
17 the critical issue in this case is whether or not the
18 plaintiff received sufficient notice of that updated
19 term and whether or not she is bound by and agreed to
20 those updated terms.
21     Now, although at no point did she ever go back in
22 and click a check box agreeing to the 2017 terms, if we
23 go back and look at the 2015 terms, we see that she did
24 agree that she would receive notice of such changes in
25 one or more or a couple of different ways.

1       One, the terms were always available to her on the
2    website should she choose to go to the website and take
3    a look at them.  Two, she received e-mails, and under
4    the terms of the 2015 agreement that she agreed to, she
5    had received about 28 e-mails after she agreed to the
6    2015 terms, and by receiving those e-mails, in each one
7    of those e-mails there was a hyperlink to the new terms.
8    So again she had the opportunity to review the terms and
9    had she chosen to do so she would have seen the updated
10   arbitration provision.  She also had the opportunity,
11   under the updated terms, to opt out of the arbitration
12   provision.
13      So it's our position that she had notice, or at
14   least constructive notice, and it was through a method
15   that she had agreed to in 2015, and the data's
16   sufficient to show an agreement.
17      THE COURT:  Well, all right, you state that, um,
18   very straightforward, and as far as I can see that's an
19   accurate statement of the record.  But the law is
20   against you on this, isn't it?  The plaintiff's
21   submission of supplemental authority would seem to
22   address this issue.
23      What's your best case here?
24      MR. PETERSEN:  Well the supplemental authority, of
25   course, is a related case that is pending out in

1  Minnesota, it's an unpublished District Court decision,
2  and the facts there are very similar to the facts here.
3  I admit that.  Unfortunately we were not able to
4  convince the judge in that case that we had the better
5  argument.  And if I had anything to do differently, I
6  think I would have argued a little bit more clearly as
7  to the notice provision in the 2015 agreement, and
8  that's the argument that I'm submitting and highlighting
9  to your Honor.
10      And that again is the issue that there's no
11  dispute that she agreed to the terms in 2015, those
12  terms included the unilateral modification provision,
13  but also she agreed to the way in which she would
14  receive notice, and among the ways she agreed she would
15  receive notice was knowing that the terms were available
16  on the website and getting notice of those terms on the
17  e-mails.
18      THE COURT:  You made the argument and I understand
19  it.
20      What's your best, um, decided case that most
21  relates to this fact situation?
22      MR. PETERSEN:  Unfortunately I cannot point to one
23  case, we of course cite various cases in our moving
24  papers where we have to piece it together and the cases
25  we cite include cases that stand for the proposition

```
 1    that unilateral modification provisions can be
 2    enforceable, and we cite cases as for the proposition
 3    that notice can be sufficient if it's constructive
 4    notice and it's of course fact-intensive.  But there is
 5    no one case directly on point that we can rely upon.
 6         THE COURT:  I appreciate that.  All right, let's
 7    hear from the plaintiffs.
 8         It's obvious why the defense wants arbitration
 9    here, because it then would appear to be able to enforce
10    the, um, class-action waiver, and that, of course,
11    they're very eager to achieve.  So what does the
12    plaintiff say?
13         MS. SLAUGHTER:  Well first I would start by the
14    fact that Hello Fresh cannot compel a former customer to
15    arbitrate when their only operative contract never
16    contained an arbitration clause, and I have three main
17    points that will address Mr. Petersen's argument and
18    show you why if you go through the analysis in a step-
19    by-step fashion, Mr. Petersen's argument does not hold.
20    I can go briefly through the facts, but if you feel
21    comfortable with the facts --
22         She is a former customer and --
23         THE COURT:  I don't mean to be brusk and this --
24    this remote, um, interaction makes me more brusk than I
25    normally would be, so I apologize for that.  But, yes, I
```

1  think I understand the facts.  And I think the defense
2  properly recited them, I have to say.  The factual
3  record is undisputed here.
4        So where does that lead us?
5        MS. SLAUGHTER:  Well I think one of the key facts
6  that maybe wasn't mentioned is that she deactivated her
7  account and Hello Fresh's CEO e-mailed her to
8  acknowledge that she had cancelled her subscription and
9  deactivated her account.
10       So if we start there, then what we understand is
11  that the contract at that point had terminated, it was a
12  contract without an arbitration clause that's now
13  completely terminated, she was no longer a customer and
14  no longer bound by the contract.  The 2017 conditions
15  don't apply at that point.
16       Also note there's no survival clause in the 2015
17  terms and conditions that would save that modification
18  clause that Mr. Petersen is relying on, so it again
19  makes any future modification irrelevant as to
20  Ms. Murray.  So I don't think the Court needs to even
21  address the argument about why it's entitled to modify
22  the terms because the contract was terminated at that
23  point.
24       But if you want to look at the modification
25  language itself, it even only applies to current

1  customers, the way it's phrased it talks about notice in
2  terms of receiving an order confirmation and the ability
3  to opt out within 7 days of receiving products.  So it
4  assumes that you are still a customer when you're
5  dealing with the modification clause.  It was never
6  designed to apply to ex-customers like Ms. Murray who
7  had already deactivated or cancelled their accounts and
8  where the contact was terminated.
9       But let's just assume the modification clause
10 somehow did apply, that raises my second legal point,
11 which is that simply including a modification clause
12 does not cure Hello Fresh's problem here because they
13 cannot show she had notice of the specific arbitration
14 provision at issue, which is a material term of any
15 contract, and that she ever actually agreed to that
16 revised contract provision that had an arbitration
17 clause in it.  And this is fatal to their argument.
18 Fundamental contract principles require notice and
19 acceptance of a material term like this, especially one
20 where you're waiving your constitutional right to a
21 trial.
22      On the notice issue we cite the *Cullinan* case out
23 of the First Circuit and the *Stark* case out of the
24 Second Circuit, which was applying New York law, and the
25 First Circuit said, quote, "Conspicuous notice of the

1    existence of contract terms and unambiguous
2    manifestation of assent to those terms by consumers are
3    essential."  Similarly the Second Circuit indicated that
4    the law requires that the offeree put on notice -- be
5    put on notice of the existence of additional contract
6    terms before it can be said that he has assented to
7    them.
8         So merely including a modification clause doesn't
9    help Hello Fresh, it doesn't mean they can unilaterally,
10   at a later time, create a new material term and deem
11   them to be part of an earlier contract without giving
12   the other party notice, specific notice of what that
13   term is and opportunities to agree to it, you still have
14   to show that notice and acceptance, that there cannot be
15   knowing acceptance of a material term if you never had
16   notice of that material term.
17        Now I want to talk about the 25 spam e-mails that
18   Hello Fresh sent to Ms. Murray, they don't give her any
19   notice about that particular material change to the
20   terms and conditions that would require her to arbitrate
21   future claims.  And here's where that Hello Fresh case
22   out of the District of Minnesota comes in.
23        The Court -- the District Court in Minnesota
24   found, as a matter of law, that the very type of e-mails
25   that Hello Fresh sent here were not sufficient to put

```
 1    the plaintiff on notice and mean that she agreed to the
 2    arbitration.  They included -- the same types of e-mails
 3    included a $15 off Cyber Monday ad and some other
 4    promotional coupons.  The terms to hyperlink in those
 5    e-mails is buried at the bottom of the coupons in small
 6    print beneath other hyperlinks and other disclaimers, it
 7    is not clear and conspicuous, and what's more is that
 8    Hello Fresh can't show that Ms. Murray ever clicked on
 9    any button to agree to these changed terms or made any
10    other affirmative act to accept that change.
11         THE COURT:  And they don't claim that she did,
12    that isn't their argument, they say that by providing
13    this data in these e-mails, that constitutes sufficient
14    notice.  You say it does not.
15         Actually, um, this is ably argued by both of you.
16    The plaintiffs have the better of this as the other
17    court has already ruled.
18         The motion to compel arbitration is denied.  The
19    matter is an important one and I will write on it.  But
20    so we know where we're going, the motion to compel
21    arbitration is denied.
22         Now let's use the time we have together to sketch
23    out actually where we are going in this case and I'll
24    give you two weeks from today's date to file a joint
25    proposed case management order.
```

1          I propose to put the case to trial no later than
2     April -- strike that, no later than May 2021.  So, um --
3     but I can do it a lot faster than that.
4          So we'll start with the plaintiff.  When do you
5     want to go to trial?
6          MS. SLAUGHTER:  Obviously I would like to go as
7     soon as possible.  I mean if we could get to trial at
8     the end of this year, I would be happy with that.  I
9     would settle with May but --
10         THE COURT:  Well, all right, maybe we can.  Let's
11    go for December of 2020.  Do you think you can get class
12    certification and notice out and be prepared for trial
13    by December 2020?
14         MS. SLAUGHTER:  I suppose it depends on how much
15    motion practice we're subjected to, your Honor.
16         THE COURT:  Well you're going to be subjected to
17    whatever motion practice the defense wants to make.  I'm
18    not, um -- we're just contracting the schedule if we go
19    in December.
20         What does the defense say?  Mr. Petersen, how
21    about a trial in December of 2020?
22         MR. PETERSEN:  We think a trial in December of
23    2020 is unrealistic, we think that we need at least a
24    year from now.  And we do, your Honor, have an automatic
25    right to appeal the decision.  So --

```
 1            THE COURT:  You do.
 2            MR. PETERSEN:  -- I just wanted to mention that.
 3            THE COURT:  Let's be clear, you have an automatic
 4   right to appeal the decision, but that does not mean
 5   that I must stay my hand.  And so we're clear, I do not
 6   stay my hand.
 7            I think that this, um -- and I mean no disrespect
 8   here, but I think your argument is, um, extremely thin
 9   and, um, it's appropriate to take the action that I have
10   taken.  So matters should be adjudicated on the merits.
11   If the First Circuit decides to stay it, of course you
12   have a right to appeal, but I'm not staying.
13            So let's assume it's not stayed.  You say a year.
14   How about the April 2021 running trial list?  Obviously
15   if the First Circuit stays it, then, um, I obey what the
16   Court of Appeals says.
17            But April 2021?
18            MR. PETERSEN:  April 2021, your Honor, would be
19   acceptable.  And if I may, on the appeal issue, and
20   normally I wouldn't even raise this, but we have to look
21   at it closely and of course we need to be operating in
22   good faith.  My only concern is at what point do I have
23   a right to appeal?  And I need to talk to my appellate
24   expert.  I don't know if your decision on the record
25   today creates that running or do we have to wait for the
```

```
 1    orders?  And so my only concern is if it takes -- and I
 2    know it takes some time to get the order in and we're
 3    dealing with discovery, and while we're waiting for your
 4    order.  So that would be my concern.
 5         THE COURT:  That's an excellent practical
 6    question.  My understanding, but don't take it from me,
 7    because I'm certainly not advising you, but I spoke on
 8    the record today intending to start the appeal period
 9    running.  I intend to write an opinion.  But the opinion
10    only amplifies my reasoning.  And so you're clear on
11    this, my reasoning is that under standard principles of
12    contract law, no contract, including an arbitration
13    clause, was ever formed between Ms. Murray and, um, your
14    client.
15         So that said, my compliment to the argument of
16    both of you was well then the facts are not in dispute
17    here, so the question is a legal question, the legal
18    question of whether on those facts, undisputed, a
19    contract arose between these parties that required
20    arbitration?  And I rule -- it's not a finding, I rule
21    that no contract on these undisputed facts was ever
22    created because there was never a meeting of the minds
23    as one, um, considers that concept in first-year
24    contracts.  Now that's my ruling.  And I will amplify it
25    in a written decision, and you're right, that will take
```

```
 1    some time especially in this era of the plague.  However
 2    I'm not staying it, I'm going ahead, the case is on the
 3    running trial list for April of 2021.  At least in my
 4    eyes the appeal period has started.
 5         So you have two weeks from today's date -- and of
 6    course your rights are reserved, I'm not in any way
 7    cabining in your rights to appeal, but you have two
 8    weeks from today's date to file a joint proposed case
 9    management schedule that would lead to -- excuse me,
10    that will lead to trial in April of 2021.
11         Now, um, I want that schedule to include
12    dispositive motions filed no later than January 2nd,
13    2021.  You can work out the discovery timetable.  You
14    can also work out the timetable necessary, um, for
15    dealing with class certification.  But on these
16    undisputed facts, there was no contract to arbitrate,
17    she cannot be held to any such contract, there may be
18    issues with respect to what the appropriate class is,
19    because the facts for all the members of the class may
20    not be as compelling as they are in Ms. Murray's case.
21    But that's the order of the court.
22         So let me just ask if there are any questions.
23    First, the plaintiff's counsel, any questions as to the
24    Court's rulings and order?
25         MS. SLAUGHTER:  None for me, your Honor.  My
```

Case 1:19-cv-12608-WGY   Document 26   Filed 04/27/20   Page 18 of 19

18

```
 1    colleague, Mr. Paronich, um, do you have any questions?
 2            MR. PARONICH:  No, your Honor.  We'll get to work
 3    on a joint-reported schedule.
 4            THE COURT:  Thank you.
 5            Mr. Petersen, any questions?
 6            MR. PETERSEN:  No questions, your Honor.  We would
 7    however ask that there be some entry on the ECF
 8    indicating this, if that's possible?
 9            THE COURT:  You're absolutely right.  The Clerk's
10    notes will reflect it.  But you can of course order the
11    transcript on which the order appears.  And there will
12    be a written decision.  But my order is as I've recited
13    it and it will appear in the Clerk's notes.
14            Does that answer your question?
15            MR. PETERSEN:  It does, thank you, your Honor.
16            THE COURT:  I thank you both.  I'm sorry for the
17    delay in getting on myself, this technology is new to us
18    all.  And I appreciate your participation in this
19    hearing.  We'll recess.
20            MS. SLAUGHTER:  Thank you, your Honor.
21            MR. PETERSEN:  Thank you.
22            (Ends, 10:40 a.m.)
23
24
25
```

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes before Judge William G. Young, on Wednesday, April 22, 2020, to the best of my skill and ability.

/s/ Richard H. Romanow 04-27-20
_____
RICHARD H. ROMANOW    Date