## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GRACE MURRAY, AMANDA ENGEN,
STEPHEN BAUER, JEANNE TIPPETT,
ROBIN TUBESING, NIKOLE SIMECEK,
MICHELLE MCOSKER, JACQUELINE
GROFF, and HEATHER HALL, on behalf of
themselves and others similarly situated,

       Plaintiffs,

v.

GROCERY DELIVERY E-SERVICES USA
INC. DBA HELLO FRESH

       Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

NO. 1:19-cv-12608-WGY

**CONSOLIDATED AMENDED
COMPLAINT – CLASS ACTION**

### Preliminary Statement

1.     Plaintiffs Grace Murray, Amanda Engen, Stephen Bauer, Jeanne Tippett, Robin

Tubesing, Nikole Simecek, Michelle McOsker, Jacqueline Groff, and Heather Hall (collectively

"Plaintiffs"), bring this action to enforce the consumer-privacy provisions of the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in

response to widespread public outrage about the proliferation of intrusive, nuisance

telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Plaintiffs allege that Grocery Delivery E-Services USA Inc. DBA Hello Fresh

("Hello Fresh" or "Defendant") violated the TCPA in three ways: (i) Hello Fresh made

telemarketing calls to Plaintiffs and other putative class members listed on the National Do Not

Call Registry without their written consent; (ii) Hello Fresh called Plaintiffs and putative class

members using an automated telephone dialer system without their prior express written consent;

and (iii) Hello Fresh called Plaintiffs and other putative class members despite their "do not call" requests.

3.     Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4.     A class action is the best means of obtaining redress for Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5.     Plaintiff Grace Murray resides in Massachusetts in this District, as she did at all relevant times during the conduct alleged in the Complaint.

6.     Plaintiff Amanda Engen resides in Minnesota, as she did at all relevant times during the conduct alleged in the Complaint.

7.     Plaintiff Stephen Bauer resides in Michigan, as he did at all relevant times during the conduct alleged in the Complaint.

8.     Plaintiff Jeanne Tippett resides in Michigan, as she did at all relevant times during the conduct alleged in the Complaint.

9.     Plaintiff Robin Tubesing resides in California, as she did at all relevant times during the conduct alleged in the Complaint.

10.    Plaintiff Nikole Simecek resides in Colorado, as she did at all relevant times during the conduct alleged in the Complaint.

11.     Plaintiff Michelle McOsker resides in Missouri, as she did at all relevant times during the conduct alleged in the Complaint.

12.     Plaintiff Jacqueline Groff resides in Pennsylvania, as she did at all relevant times during the conduct alleged in the Complaint.

13.     Defendant Grocery Delivery E-Services USA Inc. DBA Hello Fresh is headquartered in New York.

## Jurisdiction & Venue

14.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

15.     The Court has personal jurisdiction over Hello Fresh because it makes telemarketing calls and delivers its product into this District, as it did with Ms. Murray.

16.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls at issue were made into this District, and throughout the United States.

## TCPA Background

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA prohibits automated telemarketing calls to cellular telephones

18.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A).

19.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

22.     In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA's Requirements that Companies have Adequate Telemarketing Policies</u>

23.     § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

24.     These procedures are codified at 47 CFR 64.1200(d)(1)-(7). Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

25.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

<u>The National Do Not Call Registry</u>

26.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

27.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

28.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Growing Problem of Automated Telemarketing

29.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

30.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

31.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

32.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

33.     According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in August 2019 at a rate of 154.2 million per day. www.robocallindex.com (last

visited October 29, 2020). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

34.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited October 29, 2020).

**Factual Allegations**

<u>Calls to Plaintiff Grace Murray</u>

35.     Plaintiff Murray is a "person" as defined by 47 U.S.C. § 153(39).

36.     Ms. Murray's telephone number, (XXX) XXX-1476, is listed on the National Do Not Call Registry and has been since January 12, 2006.

37.     Ms. Murray's telephone number, (XXX) XXX-1476, is a residential telephone number that is not used for business purposes.

38.     Ms. Murray signed up for a Hello Fresh trial subscription in late 2015 or early 2016.

39.     Ms. Murray ended her trial subscription after a single meal delivery.

40.     In fact, on January 5, 2016, Ms. Murray received the following e-mail:



<u>We're so appy!</u>

•   <u>Download our app now for iPhone and iPad!</u>



We'll Miss You!



• Hi Grace,

My name is Seth Goldman and I'm the CEO here at HelloFresh US.

I heard that you recently deactivated your Classic Box Classic - 3 meals per week for 2 people, so I wanted to send you a quick note to thank you for being a part of the HelloFresh family.

Thanks again for being a part of the HelloFresh family. We really hope to see you again soon!

As always, Happy Cooking!



41.     Several years later, in 2018, she began receiving calls from Hello Fresh.

42.     The calls were telemarketing in purpose, designed to solicit Ms. Murray to purchase Hello Fresh services again.

43.     Ms. Murray was not interested and informed the callers of that.

44.     In fact, Ms. Murray specifically requested that she be placed on the Internal Do Not Call List of Hello Fresh.

45.     However, the telemarketing calls to her continued.

46.     In total, Ms. Murray believes she received at least 15 telemarketing calls.

Calls to Plaintiff Amanda Engen

47.     Plaintiff Engen is a "person" as defined by 47 U.S.C § 153(39).

48.     Ms. Engen's telephone number, (XXX) XXX-6708, is assigned to a cellular telephone service.

49.     Ms. Engen signed up for a Hello Fresh trial subscription in or around December 2018.

50.     Ms. Engen ended her trial subscription in approximately January 2019.

51.     Shortly thereafter, Ms. Engen began receiving telemarketing calls from Hello Fresh.

52.     On two or three occasions, Ms. Engen asked the callers from Hello Fresh to stop calling her.

53.     However, in response, the representatives from Hello Fresh simply hung up the phone.

54.     Hello Fresh either does not have or does not utilize an internal Do Not Call list, as Ms. Engen continued to receive calls from Hello Fresh despite her requests that Hello Fresh stop calling her.

Calls to Plaintiff Stephen Bauer

55.     Plaintiff Bauer is a "person" as defined by 47 U.S.C. § 153(39).

56.     Mr. Bauer's telephone number, (XXX) XXX-7600, is assigned to a cellular telephone service.

57.     Mr. Bauer signed up for a Hello Fresh trial subscription in or around March 2018.

58.     Shortly after signing up, however, Mr. Bauer decided to terminate his relationship with Hello Fresh.

59.     Hello Fresh allows consumers to "pause" their accounts if they wish to stop receiving meal delivery kits but want to remain active account holders.

60.     Alternatively, consumers can terminate their relationship with Hello Fresh entirely by "deactivating" their accounts.

61.     Mr. Bauer ended his trial subscription with Hello Fresh and wanted to terminate his relationship with the company, so he deactivated his account in or around April 2018.

62.     Soon after Mr. Bauer deactivated his account, Hello Fresh repeatedly called his cellular telephone. The purpose of Hello Fresh's calls was to solicit, or "win back," his business as a Hello Fresh subscriber.

63.     The calls annoyed Mr. Bauer and invaded his privacy, causing him to ask Hello Fresh's representatives to stop calling him on multiple occasions. Hello Fresh ignored his requests and continued calling him.

64.     Me. Bauer even emailed Hello Fresh three times asking them to stop the calls, but they continued.

65.     Mr. Bauer then filed a complaint with the Better Business Bureau, Serving Metropolitan New York, complaining about Hello Fresh's conduct.

66.     That complaint was shared with Hello Fresh, but, Hello Fresh continued calling Mr. Bauer.

Calls to Plaintiff Jeanne Tippett

67.     Plaintiff Tippett is a "person" as defined by 47 U.S.C. § 153(39).

68.     Ms. Tippett's telephone number, (XXX) XXX-0166, is assigned to a cellular telephone service.

69.     Ms. Tippett signed up for a Hello Fresh trial subscription in or around early 2018.

70.     Ms. Tippett ended her trial subscription and deactivated her account shortly thereafter, terminating her relationship with Hello Fresh.

71.     Hello Fresh subsequently started calling Ms. Tippett's cellular telephone to solicit, or "win back," her business.

72.     The calls annoyed Ms. Tippett and invaded her privacy, so she asked Hello Fresh to stop calling her on multiple occasions.

73.     For approximately one year, HelloFresh honored her do-not-call request.

74.     In approximately 2019, however, HelloFresh started placing telemarketing calls to Ms. Tippett..

75.     For example, Ms. Tippett received four calls from Hello Fresh on February 6, 2019.

76.     Ms. Tippett received at least three other calls that week—all despite her requests that Hello Fresh stop calling her.

Calls to Plaintiff Robin Tubesing

77.     Plaintiff Tubesing is a "person" as defined by 47 U.S.C. § 153(39).

78.     Ms. Tubesing's telephone number, (XXX) XXX-9357, is assigned to a cellular telephone service.

79.     Ms. Tubesing registered her cellular telephone number on the National Do Not Call Registry on July 21, 2018.

80.     Ms. Tubesing's telephone number, (XXX) XXX-1476, is not used for business purposes.

81.     Ms. Tubesing signed up for a Hello Fresh trial subscription in or around June 2018.

82.     Ms. Tubesing ended her trial subscription and deactivated her account approximately one year later in June 2019.

83.     During the cancellation process, Ms. Tubesing included a message to Hello Fresh demanding that Hello Fresh stop all communication with her.

84.     Hello Fresh disregarded her request and began placing telemarketing calls to her cellular telephone.

85.     Hello Fresh called Ms. Tubesing at least nine times in August 2019, all despite Ms. Tubesing's requests that Hello Fresh stop calling her.

Calls to Plaintiff Nikole Simecek

86.     Plaintiff Simecek is a "person" as defined by 47 U.S.C. § 153(39).

87.     Ms. Simecek's telephone number, (XXX) XXX-1616, is assigned to a cellular telephone service.

88.     Ms. Simecek registered her cellular telephone number on the National Do Not Call Registry on October 21, 2010.

89.     Ms. Simecek's telephone number, (XXX) XXX-1476, is not used for business purposes.

90.     Ms. Simecek signed up for a Hello Fresh trial subscription in or around late 2017.

91.     After several weeks, Ms. Simecek cancelled her subscription through the Hello Fresh website and terminated her relationship with the company.

92.     Shortly after Ms. Simecek canceled her subscription, Hello Fresh started placing telemarketing calls to her cellular telephone.

93.     Ms. Simecek repeatedly asked the callers to stop.

94.     Ms. Simecek estimates she received a minimum of twenty calls from Hello Fresh after asking Hello Fresh to stop calling.

95.     Ms. Simecek eventually began blocking the telephone number from which Hello Fresh was calling.

96.     Hello Fresh then began calling Ms. Simecek from different numbers, which frustrated and annoyed Ms. Simecek further.

Calls to Plaintiff Michelle McOsker

97.     Plaintiff McOsker is a "person" as defined by 47 U.S.C. § 153(39).

98.     Ms. McOsker's telephone number, (XXX) XXX-8112, is assigned to a cellular telephone service.

99.     Ms. McOsker registered her cellular telephone on the National Do Not Call Registry on December 12, 2007.

100.     Ms. McOsker's telephone number, (XXX) XXX-1476, is not used for business purposes.

101.     In June 2019, Ms. McOsker subscribed to Hello Fresh.

102.     After several weeks, Ms. McOsker cancelled her subscription through the Hello Fresh website and terminated her relationship with Hello Fresh.

103.     Shortly after Ms. McOsker canceled her subscription, Hello Fresh began placing telemarketing calls to her cellular telephone to get her to re-subscribe.

104.     Ms. McOsker repeatedly asked the callers to stop calling her, but HelloFresh continued to call despite her requests.

Calls to Plaintiff Jacqueline Groff

105.     Plaintiff Groff is a "person" as defined by 47 U.S.C. § 153(39).

106.     Ms. Groff's telephone number, (XXX) XXX-0661, is assigned to a cellular telephone service.

107.     Ms. Groff registered her cellular telephone number on the National Registry on April 4, 2006.

108.     Ms. Groff's telephone number, (XXX) XXX-1476, is not used for business purposes.

109.     In May 2018, Ms. Groff subscribed to Hello Fresh.

110.     Ms. Groff maintained her Hello Fresh subscription for approximately five months before she deactivated her account and terminated her relationship with Hello Fresh.

111.     Shortly after terminating her relationship with Hello Fresh, Hello Fresh started placing telemarketing calls to Ms. Groff's cellular telephone.

112.     On at least five occasions, Ms. Groff told the callers to stop calling her and to place her telephone number on Hello Fresh's "do not call" list.

113.     On March 13, 2019, Ms. Groff sent Hello Fresh a letter and email demanding that the calls stop.

114.     Ms. Groff attached a copy of her AT&T bill to the letter and email with one of the calls from Hello Fresh highlighted.

115.     The HelloFresh calls continued despite Ms. Groff's repeated requests.

Calls to Plaintiff Heather Hall

116.     Plaintiff Hall is a "person" as defined by 47 U.S.C. § 153(39).

117.     Ms. Hall's telephone number, (XXX) XXX-6642, is assigned to a cellular telephone service.

118.     Ms. Hall registered her cellular telephone number on the National Do Not Call Registry on October 21, 2014.

119.     Ms. Hall's telephone number, (XXX) XXX-1476, is not used for business purposes.

120.     In early December 2018, Ms. Hall subscribed to Hello Fresh as part of a promotional trial subscription.

121.     After receiving a single delivery, Ms. Hall cancelled her subscription through the Hello Fresh website and terminated her relationship with the company.

122.    Shortly after Ms. Hall canceled her subscription, Hello Fresh started placing telemarketing calls to her cellular telephone number.

123.    Hello Fresh continued to place calls to Ms. Hall's cellular telephone even though she repeatedly told the callers to stop.

124.    Frustrated by Hello Fresh's refusal to honor her "do not call" requests, on December 27, 2018, Ms. Hall filed a complaint with the Better Business Bureau ("BBB"). In her complaint, Ms. Hall explained that HelloFresh was "[c]onstantly calling" and that she requested Hello Fresh remove her number, but HelloFresh refused to acknowledge her "do not call" requests.

125.    On January 2, 2019, Hello Fresh responded to Ms. Hall and promised to cease calling her.

126.    On January 10, 2019, Ms. Hall submitted a second complaint to the BBB because Hello Fresh was still calling her.

## CLASS ACTION ALLEGATIONS

127.    As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a national class of all other persons or entities similarly situated throughout the United States.

128.    The class of persons Plaintiffs propose to represent are defined as follows:

> All persons in the United States from September 5, 2015 to December 31, 2019 to whom Hello Fresh, either directly or by a vendor of Hello Fresh, (a) placed one or more calls on their cellphones placed via a dialing platform; (b) at least two telemarketing calls during any 12-month period where their phone numbers appeared on the NDNCR for at least 31 days before the calls; and/or (c) received one or more calls after registering the

landline, wireless, cell, or mobile telephone number on which they
received the calls with Hello Fresh's Internal Do-Not-Call List.

The "Class".

129.     Excluded from the Class are counsel, the Defendant, and any entities in which the

Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom

this action is assigned, and any member of such judge's staff and immediate family.

130.     The Class as defined above are identifiable through phone records and phone

number databases.

131.     The potential members of the Class number at least in the thousands.

132.     Individual joinder of these persons is impracticable.

133.     The Plaintiffs are all members of the Class.

134.     There are questions of law and fact common to Plaintiffs and to the proposed

Class, including but not limited to the following:

> (a) whether Defendant systematically made multiple telephone calls to members
> of the National Do Not Call Registry Class;

> (b) whether Defendant made calls to Plaintiffs and members of the National Do
> Not Call Registry Class without first obtaining consent to make the calls;

> (c) whether Defendant used an ATDS to make its calls to Plaintiffs and members
> of the Autodialed Class;

> (d) whether Defendant made ATDS calls to Plaintiffs and members of the
> Autodialed Class without first obtaining prior express written consent to make
> the calls;

> (e) whether Defendant's use of an ATDS to call Plaintiffs and members of the
> Autodialed Class violated the TCPA;

> (f) whether Defendant maintained a written "do not call" policy;

(g) whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

(h) whether Defendant recorded or honored "do not call" requests of Plaintiffs and members of the Internal DNC Class;

(i) whether Defendant's conduct regarding its "do not call" policies constitute a violation of the TCPA; and

(j) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

135.    Plaintiffs' claims are typical of the claims of members of the Class.

136.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class, they will fairly and adequately protect the interests of the Class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

137.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

138.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## **FIRST CAUSE OF ACTION**

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Murray, Tubesing, Simecek, McOsker, Groff, Hall, and the National Do Not Call Registry Class)**

139.    Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

140.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and the members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

141.    The Defendant's violations were negligent, willful, or knowing.

142.    As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each and every call made.

143.    Plaintiffs and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, to any cellular telephone number in the future.

## SECOND CAUSE OF ACTION

**Telephone Consumer Protection Act
(Violations of 47 U.S.C. § 227)
(On Behalf of Plaintiffs Engen, Bauer, Tippett, Tubesing, Simecek, McOsker, Groff, Hall, and the Autodialed Class)**

144.    Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference herein.

145.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an ATDS to Plaintiffs' and the Autodialed Class members' cellular telephones without sufficient consent.

146.     Defendant's violations were negligent, willful, and knowing.

147.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Autodialed Class are presumptively entitled to an award of between $500 and $1,500 in damages for each and every call made.

148.     Plaintiffs and members of the Autodialed Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

### THIRD CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Engen, Bauer, Tippett, Tubesing, Simecek, McOsker, Groff and Hall and the Internal DNC Class)**

149.     Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference herein.

150.     Defendant placed numerous calls for telemarketing purposes to Plaintiffs and Internal DNC Class Members' telephone numbers.

151.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

152.    Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

153.    Defendant did so despite not recording or honoring "do not call" requests.

154.    Defendant placed two or more telephone calls to Plaintiffs and Internal DNC Class members in a 12-month period.

155.    Plaintiffs and Internal DNC Class members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

156.    Plaintiffs and Internal DNC Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A.    Certification of the proposed Classes;

B.    Appointment of Plaintiffs Murray, Tubesing, Simecek, McOsker, Groff, and Hall as representatives of the of the National Do Not Call Registry Class;

C.    Appointment of Plaintiffs Engen, Bauer, Tippett, Tubesing, Simecek, McOsker, Groff, and Hall as representatives of the of the Autodialed Class;

D.    Appointment of Plaintiffs Engen, Bauer, Tippett, Tubesing, Simecek, McOsker, Groff, and Hall as representatives of the of the Internal DNC Class;

E.    Appointment of the undersigned counsel as counsel for the Classes;

F.    A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

G.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future;

H.      An award to Plaintiffs and the Classes of damages, as allowed by law; and

I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated: November 11, 2020

Plaintiffs by their attorneys,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice*)
613 Williamson Street, Suite 100
Madison, WI 53703
(608) 237-1775
Sam@turkestrauss.com

ROBINS KAPLAN LLP
Stacey P. Slaughter (*pro hac vice*)
Brenda L. Joly (MA657255; MN386791)
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com
bjoly@robinskaplan.com

*Attorneys for Plaintiffs and proposed class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 11, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system.

<u>*/s/ Anthony I. Paronich*</u>
Anthony I. Paronich