**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

GRACE MURRAY, GRACE ENGEN, JEANNE
TIPPET, STEPHEN BAUER, ROBIN
TUBESING, NIKOLE SIMECEK, MICHELLE
MCOSKER, JACQUELINE GROFF, and
HEATHER HALL, on behalf of themselves and
others similarly situated,

    Case No. 19-cv-12608-WGY

   Plaintiff,

v.

GROCERY DELIVERY E-SERVICES USA
INC. DBA HELLO FRESH,

   Defendant.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A SERVICE
AWARD FOR CLASS REPRESENTATIVES AND FOR AN AWARD OF ATTORNEYS'
FEES AND EXPENSES**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND OF THE CASE ........................................................................................... 2

    I.      The TCPA ............................................................................................................. 2

    II.     HelloFresh's Telemarketing Activity ................................................................... 3

    III.    The Litigation ......................................................................................................... 3

         A.      The Minnesota and Massachusetts Cases .................................................. 3

         B.      HelloFresh's Motions to Compel Arbitration ............................................ 4

         C.      HelloFresh Appeals and Moves to Stay ..................................................... 4

         D.      Plaintiffs File The New York Case ............................................................ 5

         E.      Discovery Efforts ....................................................................................... 5

         F.      Settlement is Achieved ............................................................................... 6

         G.      The Settlement ............................................................................................ 6

ARGUMENT ......................................................................................................................... 7

    I.      The Court Should Approve a Fee Award from the Settlement Fund ..................... 7

    II.     This Court has Ordered that the Fee will be a Percentage the Net
           Settlement Fund. ................................................................................................... 7

    III.    The Requested Fee of One-Third of the Net Settlement Fund is Fair and
           Reasonable ............................................................................................................ 8

          A.      The Size of the Fund Created and Number of Persons Benefitted ............. 9

          B.      Class Counsel's Skill and Efficiency ......................................................... 9

         C.      The Complexity and Duration of the Litigation ...................................... 11

         D.      The Risk of Nonpayment .......................................................................... 11

         E.      Class Counsel's Time Invested ................................................................ 15

         F.      Awards in Similar Cases .......................................................................... 15

         G.      Public Policy Considerations ................................................................... 16

    IV.    Class Counsel's Expenses are Reasonable and Should Be Reimbursed ............. 18

    V.     The Requested Service Awards Should Be Approved ........................................ 19

CONCLUSION .................................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amanda Engen v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*,
  Case No. 0:19-cv-02433 ...................................................................................4, 5

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
  328 F.R.D. 6 (D. Mass. 2018)..................................................................................14

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
  798 F.3d 46 (1st Cir. 2015)......................................................................................7

*Barr v. Am. Ass'n of Political Consultants (AAPC)*,
  140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020).........................12, 15, 17

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015) .........................10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................................7

*Campbell-Ewald Co. v. Gomez*,
  136 S.Ct. 663 (2016)...............................................................................................14

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) .........................................................................9

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
  No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421 (N.D. Ill. Mar. 23, 2015)............20

*Creasy v. Charter Communs., Inc.*,
  No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020)............12, 13

*Dahl, et al. v. Bain Capital Partners, LLC, et al.*,
  07-cv-12388-WGY (D. Mass. Feb. 2, 2015) ............................................................8

*Davila-Lynch v. HOSOPO Corporation, et. al.*,
  Civil Action No. 18-cv-10072 (D. MA. February 5, 2021) (Saylor, J.) ..................15

*De Los Santos v. Milward Brown, Inc.*,
  Civil Action No. 9:13-cv-80670, ECF No. 82-3 and 84 (S.D. Fla., September
  11, 2015) ...........................................................................................................17, 18

*DISH Network L.L.C. v. Krakauer*,
  140 S. Ct. 676 (2019).............................................................................................10

ii

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3rd Cir. 2018) ...................................................................................13

*Elzen v. Educator Grp. Plans, Ins. Servs.*,
    No. 1:18-cv-01373-WCG, 2019 U.S. Dist. LEXIS 170798 (E.D. Wis. Oct. 2,
    2019) ........................................................................................................................16

*Facebook, Inc. v. Duguid*,
    141 S. Ct. 193, 207 L. Ed. 2d 1118 (2020) ......................................................13, 15

*In re Fidelity/Micron Sec. Litig.*,
    167 F.3d 735 (1st Cir. 1999) ...................................................................................18

*Fitzhenry v. Independent Home Products LLC*,
    Civil Action No. 2:19-cv-2993-SAL, ECF No. 41 (D. S.C., March 2, 2021) .........17

*Gadelhak v. AT&T Servs.*,
    950 F.3d 458 (7th Cir. 2020) ...................................................................................13

*Glasser v. Hilton Grand Vacations Company, LLC*,
    2020 WL 415811 (11th Cir. Jan. 27, 2020) .............................................................13

*Gonzalez v. Hosopo Corp.*,
    371 F. Supp. 3d 26 (D. Mass. 2019) ........................................................................11

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
    No. 1:18-CV-20048-DPG, 2019 U.S. Dist. LEXIS 87506, 2019 WL 2249941
    (S.D. Fla. May 24, 2019) .........................................................................................16

*Hashw v. Dep't Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. 2016) ......................................................................16

*Heaton et al v. Motor Vehicle Assurance et. al.*,
    Civil Acton No. 17-cv-40169 (D. MA. June 9, 2020) .............................................16

*Hopkins v. Modernize, Inc.*,
    Civil Acton No. 17-cv-40169 (D. MA. October 9, 2019).........................................16

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
    2020 WL 7346536 (M.D. Fl., Dec. 11, 2020) .........................................................12

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009).....................................................................................15

*Jones v. I.Q. Data Int'l, Inc.*,
    No. 1:14-CV- 00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209 (D.N.M.
    Sept. 23, 2015) .........................................................................................................20

iii

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) ................................................14

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ($30) .................................9, 16

*Kondash v. Citizens Bank Nat'l Assoc.*,
   2020 WL 7641785 (D.R.I.) (Dec. 23, 2020), *report and recommendation adopted*, 2021 WL 63409 (D.R.I)(Jan. 7, 2021) ......................10

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) ................................................10

*Lindenbaum v. Realgy, LLC*,
   --- F.Supp.3d ---, 2020 WL 6361915 ....................................12

*In re Loestrin 24 Fe Antitrust Litig.*,
   1:13-md-2472- WES-PAS, 2020 WL 4035125 (D.R.I. July 17, 2020) *report and recommendation adopted*, No. 1:13-md-2472- WES-PAS, ECF No. 1462 (D.R.I. Sept. 1, 2020) ................................................8

*In re Lupron Mktg. & Sales Practices Litig.*,
   No. 01-CV-10861-RGS, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) .............10, 12, 16

*Martin v. JTH Tax, Inc.*,
   No. 13-6923 (N.D. Ill. Sept. 16, 2015) .................................16

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368, 132 S. Ct. 740 (2012) ....................................17

*In re Neurontin Mktg. & Sales Practices Litig.*,
   58 F. Supp. 3d 167 (D. Mass. 2014) ....................................16

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ...............................................8

*In re Pool Prods. Distrib. Market Antitrust Litig.*,
   310 F.R.D. 300 (E.D. La. 2015)...........................................11

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005)....................................8, 9, 10, 20

*In re Remeron End-Payor Antitrust Litig.*,
   No. Civ. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) .............18

*Ritchie v. Van Ru Credit Corp.*,
   No. CV-12-1714-PHX-SMM, 2014 WL 956131 (D. Ariz. Mar. 12, 2014)...........20

*Rose v. Bank of Am. Corp.*,
No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ...........................................................................................................9

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ...........................................................18

*Sandoe v. Bos. Sci. Corp.*,
333 F.R.D. 4 (D. Mass. 2019)...........................................................13, 14

*In re Synthroid*,
264 F.3d 712 (7th Cir. 2001) ...........................................................18

*In re Thirteen Appeals Arising*
*out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) ...........................................................................................................7

*Thomas Krakauer v. Dish Network, L.L.C.*,
Civil Action No. 1:14-CV-333, Dkt. No. 292 (M.D.NC. September 9, 2015).......................10

*West Concord 5-10-1.00 Store, Inc. v. Interstate Mat Corp.*,
No. 10-00356-C, 2013 Mass. Super. LEXIS 22, 2013 WL 988621 (Mass. Super. Ct. Mar. 5, 2013) ...........................................................................14

*Willett v. Redflex Traffic Systems, Inc.*,
13-cv-1241, ECF No. 269 (D. N.M. October 24, 2016) .......................16

**Statutes**

47 U.S.C. § 227...........................................................................................................1

47 U.S.C. § 227(b)(1)(A).......................................................................................3

**Other Authorities**

16 C.F.R. § 310.4(b)(1)(iii)(B)(2)...........................................................14

47 C.F.R. § 64.1200(c)(2)...........................................................................3

47 C.F.R. § 64.1200(d) ...........................................................................3

47 C.F.R. § 64.1200(d) ...........................................................................3

47 C.F.R. § 64.1200(f)(5)(i-ii)...........................................................14

May 15, 2019, available at: https://www.reuters.com/article/us-money-telecoms-robocalls/your-money-should-you-pay-to-stop-phone-spam-idUSKCN1SL185 (Last Visited March 3, 2021)...........................................................18

## **INTRODUCTION**

Plaintiffs and Class Counsel respectfully file this motion to request incentive awards as well as an award of attorneys' fees and expenses. After over a year of litigation in three federal district courts and two federal circuit appeals, Plaintiffs successfully settled their Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA") claims against Defendant Grocery Delivery E-Services USA, Inc., d/b/a HelloFresh ("Defendant" or "HelloFresh"). On December 28, 2020, the Court granted preliminary approval of a $14,000,000 non-reversionary settlement fund to be distributed to a nationwide class (the "Settlement"). Dkt. 68.[1]

Plaintiffs and Class Counsel accomplished what they set out to do—obtain monetary relief for HelloFresh's TCPA violations and ensure HelloFresh's future TCPA compliance. But Plaintiffs' success was not assured. HelloFresh vigorously defended itself in the first two cases (one in Minnesota district court, the other here), moving to compel arbitration arguing its online terms contained an enforceable arbitration clause. Because Plaintiffs were called in a "win-back" campaign after deactivating their HelloFresh accounts, Class Counsel engaged an IT expert to sort out which of HelloFresh's online terms and conditions controlled. Following this investigation and extensive briefing, the courts ruled Plaintiffs did not agree to arbitrate this dispute.

Undeterred, HelloFresh appealed the arbitration rulings and moved to stay both cases pending appeal. This Court refused to stay the case, and Class Counsel's next battle with HelloFresh occurred in this Court, trying to discover previously undisclosed caller information. Class Counsel won that fight too but only after briefing a motion to compel. Despite

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement"), filed at Dkt. 61-1.

HelloFresh's roadblocks, Class Counsel continued investigating HelloFresh's telemarketing practices, and in July 2020 filed a third case in the Southern District of New York. As fall 2020 approached with an April 2021 trial date scheduled in this Court and two appeals pending, Class Counsel issued call record subpoenas to the newly-disclosed call vendors, engaged a call records expert, noticed depositions and prepared for trial.

The parties then engaged in mediation. The resulting $14,000,000 Settlement is a win because it provides certain monetary relief to class members nationwide in excess of similar TCPA class action settlements. The Settlement meets the applicable standards of fairness considering the nature of Plaintiffs' claims and the risks in class litigation. HelloFresh's ceasing of outbound calling efforts contribute a further benefit to class members of at least $2,657,205. *See* Economic Assessment of Remedial Relief, prepared by Jon Haghayeghi, Ph.D., attached hereto as Exhibit 1 ("Haghayeghi Report").

Plaintiffs now respectfully request an attorneys' fee award of one-third of the net settlement fund after removing administration expenses, $4,516,666.67 and $36,443.76 in expenses. Class Counsel also seek service awards for the nine class representatives.

## BACKGROUND OF THE CASE

### I.    The TCPA

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In their three class action cases, consolidated here for purposes of settlement, Plaintiffs alleged HelloFresh violated three TCPA provisions. First, an "ATDS" claim, as the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number

assigned to a . . . cellular telephone service ….” *See* 47 U.S.C. § 227(b)(1)(A). Second, the

Plaintiffs alleged a violation of the National Do Not Call Registry, which allows consumers to

register their telephone numbers so they do not receive telephone solicitations. *See* 47 C.F.R. §

64.1200(c)(2). Finally, the implementing regulations of the TCPA require a company to keep a

written policy, available upon demand, for maintaining a do-not-call list, training personnel

engaged in telemarketing on the use of its internal do-not-call list, and recording and honoring

“do not call” requests. 47 CFR § 64.1200(d)(1, 2, 3, 6). These policies and procedures prohibit a

company from making telemarketing calls unless they have implemented these policies and

procedures. 47 CFR 64.1200(d). The Plaintiffs alleged that HelloFresh had inadequate policies

and procedures.

## II.     HelloFresh’s Telemarketing Activity

HelloFresh is a subscription-based meal-kit delivery service with U.S. headquarters in

New York, New York. HelloFresh provides “an automatic, recurring weekly subscription” for

meal kit delivery. *See* Exhibit 2, Declaration of Anthony Paronich (“Paronich Decl.”) at ¶ 4. In

2015, HelloFresh started a “win back” telephone campaign targeting Plaintiffs and other

consumers who deactivated, rather than paused, their HelloFresh accounts in the previous two

years. *Id.* at ¶ 5. HelloFresh ran the campaign for approximately five years and contracted

various vendors to make its calls: The Office Gurus, Ltd. (“TOG”), Akorbi BPO, LLC,

Innovative Vision Marketing, Inc., Talk2Rep, Inc. d/b/a Outplex, and RSVP (Media Response)

Ltd. *Id.* at ¶ 6. During the campaign, HelloFresh’s vendors placed calls to consumers, and

Plaintiffs alleged the calls were placed without their consent. *Id.* at ¶ 7.

## III.    The Litigation

### A.     The Minnesota and Massachusetts Cases

On September 5, 2019, Plaintiff Amanda Engen filed a class action complaint in the United States District Court for the District of Minnesota against HelloFresh, captioned *Amanda Engen v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, Case No. 0:19-cv-02433 ("MN Case"). Ms. Engen alleged HelloFresh violated the TCPA by placing unsolicited telemarketing calls using an ATDS without adequate policies and procedures to make outbound telemarketing calls. On December 30, 2019, Plaintiff Grace Murray filed her class action complaint in this Court alleging HelloFresh violated the TCPA by placing unsolicited telemarketing calls to her and members of the class, whose numbers were listed on the National Do Not Call Registry. Dkt. 1.

**B.     HelloFresh's Motions to Compel Arbitration**

Out of the gate, HelloFresh vigorously opposed Plaintiffs' claims in both cases, moving to compel arbitration. HelloFresh argued that arbitration clauses in its online terms and conditions barred the claims in both cases. Paronich Decl. at ¶ 9. Because HelloFresh made multiple updates to its online terms and conditions over the years, Class Counsel had to engage a forensic IT consultant, Vestige Ltd., to analyze relevant browser and website histories to evaluate the purchase process and HelloFresh's disclosures. Paronich Decl. at ¶ 10. After briefing and argument in both cases spanning several months, Class Counsel successfully defeated HelloFresh's motions to compel arbitration. Dkt 33; MN Case Dkt. 44.

**C.     HelloFresh Appeals and Moves to Stay**

HelloFresh immediately filed an appeal of the arbitration decisions and on April 30, 2020 moved to say both cases pending appeal. Dkt. 28, 36; MN Case Dkt. 51**.** On May 1, 2020, this Court denied the motion to stay pending appeal, Dkt. 38, and subsequently set the case schedule, including a trial date of April 5, 2021. *See* Dkt. 42. In the Minnesota case, Counsel prepared and

filed an opposition to HelloFresh's motion to stay pending appeal, but by order dated June 10, 2020, the Minnesota court nonetheless entered a stay. MN Case Dkt 60.

### D.      Plaintiffs File The New York Case

As HelloFresh's appeals were pending in the First and Eighth Circuits, Class Counsel continued to investigate HelloFresh's telemarketing practices, serving document subpoenas on the Better Business Bureau in New York, where HelloFresh is headquartered in the United States. Paronich Decl. at ¶ 11. Class Counsels' discovery efforts paid off, finding additional class members whose experiences mirrored those of Ms. Murray and Ms. Engen. On July 9, 2020, Plaintiffs Jeanne Tippett Ph.D. and Stephen Bauer filed a class action complaint in the United States District Court for the Southern District of New York, captioned *Jeanne Tippet, et. al. v Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, Case No. 0:19-cv-02433 (the "NY Case"). The Complaint alleged HelloFresh violated the TCPA by placing unsolicited telemarketing calls to Plaintiffs' and class members' cellular numbers using an ATDS.

### E.      Discovery Efforts

Meanwhile in this Court, Class Counsel aggressively pursued discovery, analyzing documents and investigating HelloFresh's telemarketing campaign. Between first-party and third-party discovery, the parties exchanged over 20,000 pages of documents. Paronich Decl. at ¶ 12. Plaintiffs hired a second expert, Aaron Woolfson, to evaluate HelloFresh's dialing system and to identify putative class members from HelloFresh's call data. Paronich Decl. at ¶ 13.

In this case, the parties' counsel met and conferred over several discovery disputes. Paronich Decl. at ¶ 14. Discovery revealed HelloFresh had hired four additional third-party vendors to make its marketing calls, which HelloFresh did not disclose in its initial disclosures and refused to identify in discovery. Unable to reach a compromise with HelloFresh, on July 29, 2020, Plaintiff Murray filed a motion to compel HelloFresh to identify these undisclosed

vendors. Dkt. 49. On August 20, 2020, this Court ordered HelloFresh to disclose the information within thirty days. Dkt. 55. Plaintiff Murray subsequently served subpoenas on those vendors. Paronich Decl. at ¶ 16.

**F.     Settlement is Achieved**

With a trial date looming, the parties agreed to mediate all three cases (MN, MA and NY) on October 7, 2020 with the Hon. George H. King (Ret.) of JAMS. Paronich Decl. at ¶ 17. Settlement negotiations continued into the following week, and on October 12, 2020 the parties reached a global nationwide class settlement that HelloFresh's Board of Directors in Germany approved. Paronich Decl. at ¶ 18.

On November 11, 2020, Plaintiffs Robin Tubesing, Nikole Simecek, Michelle McOsker, Jacqueline Groff and Heather Hall joined class representatives from the other pending cases in filing a consolidated amended complaint in this Court. Dkt 59. On November 22, 2020, Plaintiffs filed a Consent Motion for Settlement, seeking Preliminary Approval of Class Action Settlement. Dkt. 61. On December 21, 2020, this Court granted preliminary approval of the Settlement. Dkt. 64.

**G.     The Settlement**

The Settlement establishes a non-reversionary $14,000,000 settlement fund (the "Settlement Fund") which exclusively will be used to pay: (1) cash settlement awards to Settlement class members (the "Settlement Class"); (2) Settlement administration expenses; (3) court-approved attorneys' fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiffs' out of pocket expenses of $36,443.76, which will be deducted from Class Counsel's fee award; and (5) a Court-approved Service Award (the "Service Award") to 9 class representatives commensurate with time spent representing the class.

Members of the Settlement Class shall have a right to receive a *pro rata* amount of the Settlement Fund after administrative expenses, Service awards, and an attorneys' fee award are paid from the Settlement Fund. If the requested expenses are approved, Class Counsel estimates the average payment to Settlement Class members would be $30.00-$50.00. As discussed below, this payout favors comparably with other TCPA nationwide class settlements.

## ARGUMENT

### I.      The Court Should Approve a Fee Award from the Settlement Fund

The TCPA is not a fee-shifting statute. *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 47 n.1 (1st Cir. 2015). Therefore, Class Counsel respectfully request a fee award from the Settlement Fund. The right of Class Counsel to be paid from a settlement fund derives from the long-accepted principal that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The First Circuit has held that in contingent fee cases, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

### II.     This Court has Ordered that the Fee will be a Percentage the Net Settlement Fund.

When this Court entered the Preliminary Approval Order on December 28, 2020, it informed the parties that "Attorneys' fees will be a portion of the net settlement figure after expenses". ECF No. 67. Class Counsel understood this Court's Order to direct Class Counsel to apply for a percentage of the settlement fund based on the amount of fund that is remaining after

administration expenses, as some courts around the country require. *See e.g. Pearson v. NBTY, Inc.,* 772 F.3d 778, 781 (7th Cir. 2014).

The settlement administrator has provided an affidavit that projects it total expenses at $450,000. *See* Exhibit 3, Declaration of Jay Geraci. This would leave a $13,500,000 net settlement fund. As such, Class Counsel are requesting one-third of that amount, or $4,516,666.67, plus $36,443.76 in expenses.

### III.   The Requested Fee of One-Third of the Net Settlement Fund is Fair and Reasonable

In this Court and in the First Circuit, an award of one-third the common fund has been held to be appropriate in class action cases, including cases where settlement administration expenses have *not* been removed from the total common fund analysis. *See, e.g. Dahl, et al. v. Bain Capital Partners, LLC, et al.*, 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33 1/3 percent of Settlement Fund) (Dkt. 1095); *In re Loestrin 24 Fe Antitrust Litig.*, 1:13-md-2472-WES-PAS, 2020 WL 4035125 at *4-5 (D.R.I. July 17, 2020) *report and recommendation adopted*, No. 1:13-md-2472- WES-PAS, ECF No. 1462 (D.R.I. Sept. 1, 2020) (awarding 1/3 of fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-82 (D. Mass. 2005) (approving 1/3 fee award).

As this Court explained in *Relafen*, "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable" but noted that factors bearing on the reasonableness of a fee request include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Relafen*, 231 F.R.D. at 79 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3rd

Cir. 2000)). This Court further said that "although not controlling precedent, the listed factors are helpful in framing the Court's analysis." *Id.* Class counsel employs those factors here and as shown below, they strongly support the requested one-third fee as appropriate, fair and reasonable.

### A.   The Size of the Fund Created and Number of Persons Benefitted

The Settlement achieved in this case is one of the largest TCPA class action settlements in recent years and the largest in Massachusetts federal court history. Paronich Decl. at ¶ 19. The proposed Settlement Class includes approximately 4,831,285 unique telephone numbers. Subject to the Court's final approval, Settlement Class Members who submit a valid claim will receive an equal share of the net Settlement Fund (after deducting fees, expenses, and any Court-approved Service Award). Dkt. 68.  If the Court approves the fees and costs requested and the Service Award, and the final number of claims reaches the conservative projections, the distribution to each current claimant would be approximately $50.  *Id.* ¶ 20.  Such a distribution would exceed many other approved TCPA settlements,[2] a factor that weighs heavily in favor of the approving the requested fee.

### B.   Class Counsel's Skill and Efficiency

Class Counsel's skill, experience and efficient lawyering helped Plaintiffs favorably settle their claims. The goal of the percentage fee-award is to ensure that competent counsel undertakes risky litigation to recover for plaintiffs who may otherwise go uncompensated. This is particularly true for TCPA cases where statutory fees are not available and the recovery to

---

[2] *See, e.g.*, *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60).

individual plaintiffs is insufficient to pay for costs and fees associated with complex TCPA litigation. *See Kondash v. Citizens Bank Nat'l Assoc.*, 2020 WL 7641785 * 3 (D.R.I.) (Dec. 23, 2020), *report and recommendation adopted,* 2021 WL 63409 (D.R.I)(Jan. 7, 2021) ("[T]he private right of action that Congress created could be mordibund but for the availability of relief on a class-wide basis.")

In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015). Here, Class Counsel met that standard. Class Counsel are both skilled and experienced in the specialized fields of consumer class action, TCPA litigation and appellate law. *See* Paronich Decl. at ¶¶ 21-22; Exhibit 4, Slaughter Decl. at ¶¶ 6-7; Exhibit 5, Strauss Decl. at ¶¶ 2,5.  Part of Class Counsel in this case were on the team that tried to verdict *Thomas Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333, Dkt. No. 292 (M.D.NC. September 9, 2015), a certified TCPA class action which resulted in more than a $61,000,000 award for approximately 50,000 telemarketing calls after a five-day trial, which is one of the few TCPA class action matters to go to trial. This decision was upheld by the Fourth Circuit Court of Appeals in May of 2019. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019).[3] Class Counsel have recovered over $150,000,000 in TCPA judgments and settlements for recipients of robocalls. Paronich Decl. at ¶ 22-23**.** This fact supports their fee request.  *See Relafen*, 231 F.R.D. at 80 (observing skill of class counsel); *In re Lupron(R)*, 2005 U.S. Dist.

---

[3] The United States Supreme Court rejected *certiorari* of this matter in December of 2019. *See DISH Network L.L.C. v. Krakauer,* 140 S. Ct. 676 (2019).

LEXIS 17456, at *14 (granting fee request and noting counsel were experienced in handling complex consumer class cases).

### C.      The Complexity and Duration of the Litigation

Courts recognize that "particularly in class action suits, there is an overriding public interest in favor of settlement,' ... because ... 'class action suits have a well-deserved reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case was complex as Class Counsel litigated *three* class action cases in tandem before obtaining a favorable class-wide settlement. This multi-jurisdictional approach sent a message to HelloFresh that consumers across the country received illegal telemarketing calls. Indeed, a nationwide class settlement was achieved.

This case also involved complex arbitration issues that required IT forensic analysis to resolve. HelloFresh, represented by the well-resourced law firm of Sheppard Mullin, moved to enforce arbitration clauses in its online terms. Because HelloFresh had modified its online terms multiple times and Plaintiffs Murray and Engen had deactivated their accounts years earlier, Plaintiffs had to engage an IT expert to determine which of HelloFresh's online terms applied and when. Paronich Decl. at ¶ 10. Class Counsels' hard work on this issue allowed Plaintiffs' class claims to proceed against HelloFresh and they ultimately obtained class-wide relief. Furthermore, Class Counsel engaged in expert analysis of the dialing systems HelloFresh's vendors used to see if those systems qualified as an ATDS under the TCPA, which Judge Saylor noted when reviewing a motion to dismiss considering the same issue, "the TCPA is an unusually confusing statute." *Gonzalez v. Hosopo Corp.,* 371 F. Supp. 3d 26, 34 (D. Mass. 2019). This complexity factor weighs in favor of approving the requested fee.

### D.      The Risk of Nonpayment

Class Counsel performed the legal work for all three cases on an entirely contingent basis. Paronich Decl. ¶ 24. "Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award." *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005).

First, Class Counsel accepted significant risk of nonpayment for its work in light of recent developments and uncertainty in the law. Only months into this litigation, the U.S. Supreme Court accepted review of *Barr v. American Association of Political Consultants, Inc*., in which the Court considered the constitutionality of a TCPA exception and whether it was severable from the remaining provisions. Class Counsel vigorously pursued Plaintiffs' claims, nonetheless. In *Barr*, the Supreme Court struck down that provision of the TCPA as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. *Barr v. Am. Ass'n of Political Consultants (AAPC),* 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020). However, defendants in TCPA cases have proffered the argument that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entirety of the TCPA was unconstitutional. They argue that from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law, the TCPA was unconstitutional and any alleged TCPA violations during that time are not enforceable in federal court. Indeed, multiple federal courts have adopted this interpretation. *See Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020).[4] As such, the Settlement Class members risked

---

[4] *See also Lindenbaum v. Realgy, LLC*, --- F.Supp.3d ---, 2020 WL 6361915, at *4 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 2020 WL 7346536 (M.D. Fl., Dec. 11, 2020).

recovering *nothing* if this Court or the First Circuit sided with the Court in *Creasy*.

Recently, the Supreme Court also heard oral argument regarding what constitutes an "automatic telephone dialing system" under the TCPA. *Facebook, Inc. v. Duguid*, 141 S. Ct. 193, 207 L. Ed. 2d 1118 (2020). The dialing system Defendant allegedly used is less likely to be found to be an ATDS in the Third , Seventh and Eleventh Circuits due to recent developments in those Circuits. Specifically, those decisions are *Gadelhak v. AT&T Servs.,* 950 F.3d 458 (7th Cir. 2020), *Dominguez v. Yahoo, Inc*., 894 F.3d 116 (3rd Cir. 2018), and *Glasser v. Hilton Grand Vacations Company, LLC*, 2020 WL 415811 (11th Cir. Jan. 27, 2020). These cases should be considered a significant risk if the case here were litigated to judgment, because there was a likelihood that, given the split in authority, Supreme Court review could result in a less favorable ATDS interpretation. Notably, Justice Amy Coney Barrett wrote the decision for the Seventh Circuit in *Gadelhak*. If the Supreme Court were to agree with the Third, Seventh or Eleventh Circuit Court of Appeals, no one, including the Plaintiffs, would have been able to recover *anything at all* for any calls made to their cellular telephones with a dialing system that they contend to be an ATDS. With the *Facebook* case pending, continuing to litigate this case would have been riskier still, and the settlement value of this case likely would have declined.

Class Counsel's risk of nonpayment was also substantial because class certification is far from certain in TCPA cases, including in TCPA cases decided by another court in this District and elsewhere in Massachusetts. *See e.g. Sandoe v. Bos. Sci. Corp.,* 333 F.R.D. 4, 9 (D. Mass. 2019) (denying TCPA class certification motion holding, "plaintiff has not met his burden of demonstrating that common issues predominate. The universe of potential class members includes only individuals who are associated with telephone numbers that Boston Scientific and its partner clinics believed to be registered to clinic patients. This is not a case where the

defendant engaged in 'random robocalling.'"); *Bais Yaakov of Spring Valley v. ACT, Inc.,* 328 F.R.D. 6 (D. Mass. 2018); *West Concord 5-10-1.00 Store, Inc. v. Interstate Mat Corp.*, No. 10-00356-C, 2013 Mass. Super. LEXIS 22, 2013 WL 988621, at *1 (Mass. Super. Ct. Mar. 5, 2013) Like *Sandoe*, HelloFresh was not calling people randomly, it was contacting its former customers. Class certification was a meaningful risk.

Even if the class were certified, Plaintiffs still would face substantial obstacle in establishing HelloFresh's vicarious liability for its vendors' alleged calling conduct. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), said TCPA litigants must establish vicarious liability through traditional agency principles. Here, HelloFresh's contracts prevented the vendors it hired from engaging in conduct violating the TCPA. Paronich Decl. ¶ 25.  This fact alone could be fatal to the Plaintiffs' claims, as some courts have held that in order to establish vicarious liability for a TCPA violation, a plaintiff "must do more than establish an agency relationship." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). A plaintiff "must also establish actual authority to place the unlawful calls."

Lastly, HelloFresh's affirmative defenses heightened the risk of no recovery at all. HelloFresh defended its telemarketing campaign by claiming it had an "established business relationship" ("EBR") with Plaintiffs and the class. The EBR defense permits telemarketers to call any person they had a "business relationship" with in the previous 18 months. 16 C.F.R. § 310.4(b)(1)(iii)(B)(2); 47 C.F.R. § 64.1200(f)(5)(i-ii). Indeed, all class members had previously done business with HelloFresh by ordering its products. But Plaintiffs argued they had "terminated" their business relationships with HelloFresh by deactivating their accounts, consistent with HelloFresh's terms of service. If this Court or another court determined

14

"deactivation" did not constitute "termination" under TCPA regulation, Plaintiffs' claims would be dismissed.

Knowing these risks, Class Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement."). An unfavorable ruling in *Barr, Facebook Inc.*, a denial of class certification, being unable to establish an agency relationship or a finding that Plaintiffs had an EBR with HelloFresh would have wiped out Plaintiffs' claims leaving Plaintiffs and Class Counsel with no recovery. The risk of nonpayment here was high, and this factor supports Plaintiffs' requested attorney fee award.

### E.    Class Counsel's Time Invested

Class Counsel's investigative work began well before filing Plaintiff Engen's Complaint in 2019. Class counsel reviewed thousands of social media posts, public complaints and consumer reviews to understand the scope of HelloFresh's allegedly illegal win-back campaigns. Class Counsel continued this investigative work even as it litigated, making it possible to file two additional cases after the first, and seek recovery on behalf of a national class. Class Counsel successfully briefed motions, prepared an appellate brief, worked with experts, reviewed tens of thousands of pages of documents, prepared for trial and then negotiated the Settlement and sought preliminary approval for the same. The work continues today. Class Counsel's commitment of time and resources in this case supports its requested fee award.

### F.    Awards in Similar Cases

Courts across the country have awarded attorneys' fees in class action TCPA cases in the percentage Class Counsel requests here, including Judge Saylor and Judge Hillman. *See Davila-Lynch v. HOSOPO Corporation, et. al.*, Civil Action No. 18-cv-10072 (D. MA. February 5,

2021) (Saylor, J.) (awarding one-third of the entire common fund in attorneys' fees); *Heaton et al v. Motor Vehicle Assurance et. al.,* Civil Acton No. 17-cv-40169 (D. MA. June 9, 2020) (Hillman, J.) (Same); *Hopkins v. Modernize, Inc.,* Civil Acton No. 17-cv-40169 (D. MA. October 9, 2019) (Hillman, J.) (Same); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 U.S. Dist. LEXIS 87506, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949-50 (D. Minn. 2016) (citing TCPA cases from three circuits where attorney's fees were awarded roughly "equal to one-third of the settlement fund").[5]

The similarity of Class Counsels' requested fee award to those in similar cases favors approval of the award.

### G.    Public Policy Considerations

Public policy considerations support awarding Class Counsel the requested fee award. There is a "significant societal interest" in holding defendants accountable through class action litigation. *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005). Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the public." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171 (D. Mass. 2014).

TCPA violations often cause widespread annoyance and harm to millions of individuals

---

[5] *See also Elzen v. Educator Grp. Plans, Ins. Servs.*, No. 1:18-cv-01373-WCG, 2019 U.S. Dist. LEXIS 170798, at *6 (E.D. Wis. Oct. 2, 2019) (awarding fees of one-third the Settlement Fund in a TCPA class action); *Martin v. JTH Tax, Inc.,* No. 13-6923 (N.D. Ill. Sept. 16, 2015) (38% of total fund in TCPA case); *Willett v. Redflex Traffic Systems, Inc.,* 13-cv-1241, ECF No. 269 (D. N.M. October 24, 2016) (awarding class counsel one third of settlement fund in TCPA class action); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 501 (N.D. Ill. 2015) (36% of the fund net admin costs in TCPA case)

in a single telemarketing campaign. Indeed, as the Supreme Court explained last year,

"Americans passionately disagree about many things. But they are largely united in their disdain

for robocalls." *Barr* at *5. But an individual's claim is costly and inefficient to bring on its own,

making class action relief the best vehicle to ensure the TCPA is enforced. As the Supreme Court

previously explained:

> The current federal district court civil filing fee is $350. 28 U.S.C. §1914(a). How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court? Lexis and Westlaw searches turned up 65 TCPA claims removed to federal district courts in Illinois, Indiana, and Wisconsin since the Seventh Circuit held, in October 2005, that the Act does not confer exclusive jurisdiction on state courts. All 65 cases were class actions.

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386, 132 S. Ct. 740, 753 (2012) As discussed

above, TCPA class actions are risky, all the more during this litigation when two Supreme Court

decisions were pending. Public policy supports Plaintiffs' attorney fee request given the relief

they received in the context of the risk.

Class Counsel achieved the largest TCPA settlement in Massachusetts history and

HelloFresh has stopped outbound calling campaigns following the lawsuits. To offer an

economic assessment of the benefit of HelloFresh no longer making outbound calls, Plaintiffs

engaged Jon Haghayeghi, Ph. D. The analysis performed by Dr. Haghayeghi has been accepted

for valuing injunctions and remedial relief in TCPA settlements on multiple occasions. *See*

*Fitzhenry v. Independent Home Products LLC*, Civil Action No. 2:19-cv-2993-SAL, ECF No. 41

(D. S.C., March 2, 2021) (Order granting final approval to a TCPA class action settlement aided

by an analysis performed by Dr. Haghayeghi's office of the future remedial relief); *De Los*

*Santos v. Milward Brown, Inc.*, Civil Action No. 9:13-cv-80670, ECF No. 82-3 and 84 (S.D.

Fla., September 11, 2015) (same).

Dr. Haghayeghi's assessment relies on a consumer willingness-to-pay model with an

annual price to avoid the annoyance of these types of calls of $0.55. *Id.*[6] The study concludes

that for this Settlement Class, the most conservative measure of the relief is $2,657,205 for each

year HelloFresh ceases the calling conduct. *See* Haghayeghi Report, Appendix 1). As

HelloFresh stopped its outbound calling efforts shortly after the filing of the first lawsuit, more

than a year has already passed. The report emphasizes that this assessment does not cover any

additional broad societal interests and values and remains a conservative assessment of the

value of the remedial relief provided by the Settlement Agreement in this matter. *Id.*

## IV.    Class Counsel's Expenses are Reasonable and Should Be Reimbursed

Counsel whose efforts create a common fund to benefit a class are entitled

to recover from the fund "expenses. reasonable in amount, that were necessary to bring the

action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *In re*

*Synthroid*, 264 F.3d 712, 722 (7th Cir. 2001). To be recoverable, the expenses must be

"adequately documented and reasonably and appropriately incurred in the prosecution of the

class action." *In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Class Counsel incurred $36,443.76 in litigation expenses. *See* Paronich Decl. at ¶

26; Slaughter Decl. at ¶ 9; Strauss Decl. at ¶6. These expenses are well-documented, based on

the firms' books and records and include, among other things, expert fees; costs associated with

creating and maintaining an electronic document database; online legal research costs; filing fees

and mediation costs. Courts routinely authorize similar expenses. *See In re Remeron End-Payor*

---

[6] The conservative nature of this estimate is further demonstrated by the fact that such products do exist for consumers to purchase at $2-5 a month. *See* Your Money: Should you pay to stop phone spam, May 15, 2019, available at: https://www.reuters.com/article/us-money-telecoms-robocalls/your-money-should-you-pay-to-stop-phone-spam-idUSKCN1SL185 (Last Visited March 3, 2021).

*Antitrust Litig.,* No. Civ. 02-2007, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving costs).

## V.      The Requested Service Awards Should Be Approved

Plaintiffs respectfully request approval of Service awards, including awards of $10,000 to each of Grace Murray and Amanda Engen, class representatives in the Minnesota and Massachusetts cases. Ms. Murray and Ms. Engen greatly assisted Class Counsel providing essential background for the case and reviewed and approved the complaints. When HelloFresh moved to compel arbitration, Ms. Engen allowed her computer and electronic devices to be subjected to forensic analysis to determine which of HelloFresh's terms and conditions applies. Ms. Engen also collected call records from her cell provider, searched for purchase history with HelloFresh and regularly communicated with Class Counsel as the litigation progressed. For her part, Ms. Murray actively participated in discovery, responding to interrogatories and providing documents including call records to be produced. Both Ms. Murray and Ms. Engen were willing and prepared to testify at trial if necessary.

An Service Award of $5,000 would compensate Jeanne Tippet and Stephen Bauer, the class representatives in the New York case. They searched for and provided documents to Class Counsel including call records and BBB complaints. Plaintiff Bauer produced extensive communication with HelloFresh, providing solid evidence that HelloFresh was on notice of the illegal calling campaigns carried out by its vendors. Likewise, Plaintiff Tippet met with Class Counsel by phone and in-person to piece together her factual history as it relates HelloFresh.

A Service Award of $2,000 would compensate each of Robin Tubesing, Nikole Simecek, Michelle McOsker, Jacqueline Groff and Heather Hall for agreeing to serve as class representatives and for searching for and producing documents related to their experience with HelloFresh. The information they provided Class Counsel was critical in determining the

evolving terms and conditions and conduct of HelloFresh. Collectively, they provided credit card statements, call records and screenshots, reflecting their purchase and call histories. They also produced emails, letters, and complaints directed both to HelloFresh and third parties memorializing the unwanted calling. *See* Exhibit 6, Declarations of Grace Murray, Amanda Engen, Stephen Bauer, Jeanne Tippett, Robin Tubesing, Nikole Simecek, Michelle McOsker, Jacqueline Groff, and Heather Hall.

The Service awards are justified and reasonable considering the proposed recipients' individual and collective efforts. Service awards serve an important function in advancing class action suits. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Class Counsel's request for Service awards to Plaintiffs of up to $10,000 is in line with service awards that courts have approved in comparable TCPA matters, and is in fact on the lower end.  *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. Sept. 23, 2015) ($20,000 Service Award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 Service Award from a $2.3 million common fund).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Counsel respectfully request that the Court approve the requested attorneys' fees and expenses and the proposed Service awards to Plaintiffs.

Dated: March 8, 2021          Plaintiffs by their attorneys,

*/s/ Stacey P. Slaughter*
Stacey P. Slaughter (*pro hac vice*)
Brenda L. Joly (MA657255; MN386791)
ROBINS KAPLAN LLP
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com
bjoly@robinskaplan.com

PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice*)
613 Williamson Street, Suite 100
Madison, WI 53703
(608) 237-1775
Sam@turkestrauss.com

*Attorneys for Plaintiffs and proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2021, a true copy of the above document was served upon each attorney of record for each other party and with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/Brenda L. Joly*
Brenda L. Joly

91380612.1

21