UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GRACE MURRAY, GRACE ENGEN, JEANNE
TIPPET, STEPHEN BAUER, ROBIN
TUBESING, NIKOLE SIMECEK, MICHELLE
MCOSKER, JACQUELINE GROFF, and                    Case No. 19-cv-12608-WGY
HEATHER HALL, on behalf of themselves and
others similarly situated,

   Plaintiff,

v.

GROCERY DELIVERY E-SERVICES USA
INC. DBA HELLO FRESH,

   Defendant.

**PLAINTIFFS' MOTION TO REQUIRE AN APPEAL BOND**

Plaintiffs respectfully submit this memorandum in support of their motion under Fed. R. App. 7 to require Objector Sarah McDonald ("Objector" or "Ms. McDonald") to post an appeal bond to cover costs associated with her frivolous appeal of the Court-approved class wide settlement.

**INTRODUCTION**

If there is any case where an appeal bond is warranted, it is this one. A repeat class action objector, represented by another repeat class action objector, has appealed the Court's final approval of an historic class-wide $14,000,000 Telephone Consumer Protection Act ("TCPA") settlement that not only contemplates significant monetary relief to the class but also enjoins HelloFresh from compelling arbitration of future TCPA claims. However, during the pendency of appeal, such relief is denied to Settlement Class members. In these instances, where a frivolous appeal holds up relief for an entire settlement class, the Court can, and should, require the Objector

to post an appeal bond sufficient to defray costs and to check objectors' motives in filing appeals. Here, as discussed below, Ms. McDonald's objection to the Settlement is based entirely on her self-interest rather than the interest of the Settlement Class.

In granting final approval, the Court found the "Settlement Agreement provides substantial value to the Settlement Class" and was the result of "extensive arms-length negotiations." Doc. 107 at ¶¶2, 3. More than 4,800,000 class members received direct, personal notice via e-mail or first-class mail of the Settlement, but only three objections were made: Two by *pro se* class members and one by Ms. McDonald, represented by her counsel Eric Isaacson.  The Settlement Class members' response has been overwhelmingly positive, with over 100,000 class members filing claims to take part in the significant monetary benefit the Settlement provided. Plaintiffs already addressed the many frivolous objections the Objector raised, and the Court overruled those objections in granting final settlement approval. The Objector's prospect of obtaining appellate reversal is incredibly slim, particularly because the appellate court will review this Court's decision for abuse of discretion.

The Objector has not raised any valid basis to attack the Settlement, let alone now significantly delay its effect. But despite its lack of merit, Ms. McDonald's appeal will delay the Settlement fund distribution and impose substantial costs on the Class due to additional settlement administration expenses, thus directly reducing the Settlement proceeds available for distribution to the Settlement Class. *See* Geraci Decl. As a result, the Objector should bear the burden of paying an appeal bond under Fed. R. App. P. 7 to cover the significant costs that the parties must spend to defend against this frivolous appeal that serves only to delay relief to the Settlement Class, including both monetary relief and important injunctive relief that would prevent the Defendant from enforcing its arbitration provision against the Settlement Class. By choosing to pursue this

appeal, the Objector must be responsible for ensuring the inevitable payment of Plaintiffs' costs on appeal.

The proposed bond would be $23,795 to cover $23,675 in additional administrative costs that will be incurred while the appeal is pending and $60 of taxable costs under Fed. R. App. P. 39.

### RELEVANT BACKGROUND ON THE OBJECTOR'S BASELESS APPEAL

In October 2020, Plaintiffs reached a nationwide class settlement of their TCPA claims against Defendant during an arms-length mediation with the Hon. George H. King (Ret.) of JAMS following months of vigorous litigation of their claims in multiple jurisdictions. *See, e.g.* Doc. 63 at 23; Doc. 79 at 11. The Settlement encompasses 4,831,281 people and establishes a non-reversionary $14,000,000 Settlement Fund, which will be used to pay cash awards to Settlement Class members, Settlement administration expenses, attorneys' fees and costs as approved by the Court, and service awards for the named Plaintiffs as approved by the Court. *See, e.g.* Doc.63 at 14; Doc. 107. The Settlement was met with nearly unanimous approval by Settlement Class members, with only approximately 270 members opting out, over 100,000 filing claims to take part in the Settlement fund, and only three members lodging objections. *See* Doc. 79-1. One of those objectors was Sarah McDonald, represented by repeat objector's counsel, Attorney Isaacson.

Ms. McDonald has objected to class action settlements in six cases prior to this one. *See Campbell v. Airtouch Cellular (aka Verizon),* Case No. GIC 751725 (Sup Ct. Cal.)*; In re HP Inkjet Printer Litig.*, Case No. 5:05CV3580 (N.D. Cal.); *Foos v. Ann, Inc.*, Case No. 11CV2794 (S.D. Cal.); *Rodriguez v. West Pub. Corp.*, Case No. 2:05CV03222 (C.D. Cal.); *Russell v. Kohl's Dep't Stores,* Case No. 5:15CV01143 (C.D. Cal.); *In re Cipro Cases I & II, Superior Ct. of San Diego Cty.*, Nos. JCCP 4154, JCCP 4220; Doc. 77-1. In four of those six previous class settlement

objections, Ms. McDonald was represented by Attorney John W. Davis, who is a frequent collaborator with the Objector's current counsel, Attorney Isaacson. Doc. 77-1. In fact, Attorney Isaacson has represented Attorney Davis as an objector in at least two other cases as well. *Id.*

Ms. McDonald's objection to the Settlement threw everything at the wall to see what would stick, asserting that the Court should not grant final approval for eight separate reasons: 1) the Settlement fund was not large enough given the potential statutory damages under the TCPA; 2) the Court should not have deferred to Class Counsel's assertions that the Settlement was good; 3) the Court should have required separately-represented subclasses for the National Do Not Call Registry claims and the Automatic Telephone Dialing System claims; 4) service awards to the named Plaintiffs are illegal; 5) Class Counsel's fee request should be denied because they did not provide enough information to support their fee request; 6) Class Counsel's fee request impermissibly exceeded their lodestar; 7) Plaintiffs' economic assessment of the value of the injunctive relief in the Settlement was unreliable; and 8) Class Counsel's request for expenses should be denied because they were not itemized. Doc. 75.

Unsurprisingly, none of these theories held any weight. Plaintiffs addressed each argument in their motion for final approval of the Settlement (*see* Doc. 79), the Objector submitted a brief in opposition to the motion for final approval (Doc. 85), and the Objector appeared via her counsel Mr. Isaacson at the initial final approval hearing on May 11, 2021 (Doc. 89). At that hearing, the Court asked Class Counsel to provide supplemental briefing on whether, despite HelloFresh's litigation position that all of its former customers are subject to some iteration of HelloFresh's arbitration clause, (i) the interests of Settlement Class Members have been adequately represented in reaching a settlement; and (ii) the settlement serves the public interest. The Court also sought clarification on the total amount of, and basis for, Class Counsel's attorneys' fee request for work

performed on behalf of the Settlement Class. Doc. 92. Class Counsel submitted supplemental briefing on these issues in support of final approval, and the Objector had an opportunity to respond. *See* Doc. 92, 99.

Subsequently, additional settlement discussions between Plaintiffs and HelloFresh that resulted in an amendment to the Settlement to provide that future claims by Settlement Class members against HelloFresh for violations of the TCPA are not released by the Settlement and that HelloFresh will not seek to compel arbitration of those claims. *See* Doc. 103, 107. On October 15, 2021, this Court then overruled the Objector's objections, finally approved the Settlement, and entered judgment. Doc. 107, 108. In granting final approval, this Court found that the Settlement Agreement "is, in all respects, fair, adequate, and reasonable," and specifically noted that "the low number of objectors to the Settlement… demonstrate[es] that the Settlement Class has a positive reaction to the proposed settlement." Doc. 107 at 2. The Court also noted that the "Settlement Agreement provides substantial value to the Settlement Class" and that it was reached after "extensive arm's-length negotiations" that took place "in good faith." *Id.* Given these findings, the Court overruled all objections, holding that nothing in any objections (including Ms. McDonald's) merited "disturb[ing] [the Court's] previous findings" preliminarily approving the Settlement. *Id.* The Objector's appeal followed. Doc. 111.

### ARGUMENT

## I.     Legal Standard for Imposing a Rule 7 Appeal Bond.

Under Federal Rule of Appellate Procedure 7, the Court "may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Whether an appeal bond should be required and at what amount is fully within the discretion of the district court. *In Re Pharm. Indus. Average Wholesale Price Litig.*, No.

CIV.A. 01-12257-PBS, 2012 WL 12748, at *1 (D. Mass. Jan. 4, 2012) (citing *Skolnick v. Harlow,* 820 F.3d 13, 15 (1st Cir. 1987)).

Under Fed. R. App. P. 7 and 39, those costs plainly include "costs on appeal" for the "preparation and transmission of the record" and for "the reporter's transcript, if needed to determine the appeal."[1] However, in the First Circuit, where the district court finds that "an appeal **may be frivolous,**" "costs under Rule 7 may also include administrative costs to the classes that will likely be caused by the delay." *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 277 (D. Mass. 2007) (citing *Barnes v. FleetBoston Fin. Corp.,* No. 01–10395–NG, 2006 WL 6916834, at *2 (D. Mass. Aug. 22, 2006)). "Requiring objectors to post a bond will ensure that a class litigating a frivolous appeal will not be injured or held up by spoilers." *Id.*

## II.      An Appeal Bond Should be Ordered Here.

The Court should exercise its discretion to order the Ms. McDonald to file a Rule 7 appeal bond of $23,795. An appeal bond is appropriate here for two key reasons. First, the Objector's appeal lacks merit and may be frivolous, yet will cause significant delays and additional expenses that will reduce the Settlement Class's recovery. Second, Ms. McDonald and her counsel, Attorney Isaacson, are repeat objectors, which supports requiring an appeal bond.

### A.      The meritless appeal will cause significant delay and expenses to the detriment of the Settlement Class.

The Objector's appeal of the final approval order will not be successful. As detailed in prior submissions, Ms. McDonald raised eight separate objections to the Settlement, each of which has been considered and rejected by this Court. *See* Doc. 107, 109 at 31:11-14; Doc. 108. The

---

[1] Under Fed. R. App. P. 39(e), costs on appeal may also include any "premiums paid for a bond or other security to preserve rights pending appeal," and "the fee for filing the notice of appeal."

Objector's arguments will fare no better on appeal. This is particularly true given that the standard governing the Objectors' appeal will be "abuse of discretion." *See, e.g., Voss v. Rolland*, 592 F.3d 242, 245-246 (1st Cir. 2010) ("We review for abuse of discretion the district court's [decision] . . . whether to approve the . . . settlement"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32 (1st Cir. 2009) ("We review the district court's approval of a settlement for abuse of discretion.").

### 1.     The Objector's meritless arguments.

The Objector made eight separate arguments as to why the Settlement was insufficient and Class Counsels' fee and expense request should be denied, which Plaintiffs expect the Objector will renew on appeal. Doc. 75. Plaintiffs addressed these arguments in their Motion for Final Approval and will not rehash that analysis in detail here. Doc. 79. But, given this Court's careful review of the Settlement, which included multiple hearings and rounds of briefing before granting final approval, it is very unlikely that the Objector can show the Court abused its discretion by overruling the Objector's myriad and non-cohesive arguments. *See Barnes v. Fleetboston Fin. Corp.*, No. 01–cv–10395–NG, 2006 WL 6916834, at *2 (D. Mass. Aug.22, 2006) (finding that appeal bond was appropriate where objector's arguments on appeal had no basis in case law or statute).

The Objector's key focus on appeal will almost certainly be her objection that service awards to the named Plaintiffs are illegal. *See* Doc. 75; Doc. 85; Doc. 89 at 5:4-6:1. Attorney Isaacson, on behalf of a different objector, had success with this argument in the Eleventh Circuit (*see Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1255 (11th Cir. 2020)) and now seeks to repeat that success here, despite there being no basis for such a finding in the First Circuit. The Eleventh Circuit's decision in *Johnson* was the first of its kind and has yet to be followed by any

other circuit. *See, e.g.*, *Somogyi v. Freedom Mortg. Corp.*, N495 F.Supp.3d 337, 353-54 (D.N.J. 2020) (approving a TCPA settlement holding "there is substantial precedent from this Circuit supporting approval of incentive payments. Until and unless the Supreme Court or Third Circuit bars service awards or payments to class plaintiffs, they will be approved by this Court if appropriate under the circumstances."); *Grace v. Apple, Inc.,* No. 17-CV-00551-LHK, 2021 WL 1222193, *7 (N.D. Cal. Mar. 31, 2021) (declining to follow *Johnson* because "[S]ervice awards have long been approved in the Ninth Circuit") (citation omitted; internal quotation marks omitted); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2021 WL 247958, at *3 (W.D. Mo. Jan. 25, 2021), *aff'd*, No. 20-3481, 2021 WL 5815992 (8th Cir. Dec. 8, 2021) (declining to follow *Johnson*, finding, "the Eighth Circuit has expressly recognized the value of service awards"); *In re Apple Inc. Device Performance Litig.,* No. 5:18-md-02827-EJD, 2021 WL 1022866, *11 (N.D. Cal. Mar. 17, 2021); *Knox v. John Varvatos Enters.,* 520 F.Supp.3d 331, 349 (S.D.N.Y. Feb. 17, 2021) (noting that the Second Circuit, analyzing the same two nineteenth century Supreme Court cases as in *Johnson*, held that those cases do not bar service awards); *Wickens v. Thyssenkrupp Crankshaft Co., LLC*, No. 1:19-cv-6100, 2021 WL 267852, *2 (N.D. Ill. Jan. 26, 2021); *Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 WL 7711409, *7 n. 8 (E.D. Pa. Dec. 28, 2020); *Izor v. Abacus Data Sys.,* No. 19-cv-01057-HSG, 2020 WL 12597674, *8 (N.D. Cal. Dec. 21, 2020); *Hart v. BHH, LLC*, No. 15cv4804, 2020 LW 5645984, *5 n. 2 (S.D.N.Y. Sep. 22, 2020).

Courts in the First Circuit have a long history of approving service awards for class representatives in the context of common fund settlements, and thus the Objector has little to no chance of changing well-established law that is also followed by every other circuit in the country. *See Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 85 (1st Cir. 2015); *Carlson v. Target Enter., Inc.*,

447 F. Supp. 3d 1, 5 (D. Mass. 2020) ("Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation") (citation omitted; internal quotation marks omitted); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (overruling objection that service awards of $8,000 for each named plaintiff were excessive); *Wright v. S. New Hampshire Univ.*, No. 20-CV-609-LM, 2021 WL 4312760, at *4 (D.N.H. Sept. 22, 2021).

Another argument Ms. McDonald is likely to raise on appeal is that the National Do Not Call Registry ("NDNCR") claims are more valuable than the Automatic Telephone Dialing Systems ("ATDS") claims, and thus required separately represented subclasses. *See* Doc. 75, 99. But, as Plaintiffs noted in their prior briefing, which the Court agreed with, all Settlement Class members' claims are for telephone calls placed in violation of the TCPA, and the same statutory damages of $500 applies to each claim under the TCPA (*see* 47 U.S.C. §§ 227(b)(3), 227(c)(5)) and the NDNCR claims carried litigation risks that the ATDS claims did not, including the "established business relationship" defense and the "safe harbor" affirmative defense. *See* Doc. 79 at 21. Plaintiffs cited numerous cases showing that separate representation is not required for NDNCR and ATDS claims (*see id.*) and there is no new case law that suggests the First Circuit will reach a different conclusion.

The Objector is also likely to argue on appeal that the attorneys' fees and expenses awarded to Class Counsel were inadequately documented and/or excessive. *See* Doc. 99 at 6-8. Again, this argument is highly unlikely to have any success given the fee award by this Court that was well-within the bounds of what courts commonly award in TCPA class action settlement contexts. *See* Doc. 71, 92 (Plaintiffs' memoranda in support of Class Counsels' fee application); Doc. 107. Much of this argument from the Objector is mooted by the fact that the Court did not award Class Counsel

the amount of fees they requested (one-third of the net Settlement Fund) but rather awarded

$3,430,256.23, which is 25% of the net Settlement Fund. Given the work done by Class Counsel

and the result reached, this fee award is reasonable and will not be overturned on appeal. *See, e.g.*

*In re Lupron Mktg. & Sales Pracs. Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at \*5 (D.

Mass. Aug. 17, 2005) (citing *In re Fleet/Norstar Securities Litig.*, 935 F. Supp. 99, 109 (D.R.I.

1996)) ("Courts in the First Circuit have recognized that fee awards in common fund cases

typically range from 20 to 30 percent.").

The Objector's expected arguments are frivolous and will not be well-taken by the First

Circuit, thus supporting Plaintiffs' request for a FRAP 7 appeal bond.

**2.      The Objector's frivolous appeal will impose significant costs on Settlement Class members.**

Despite its futility and near-certain likelihood of defeat, the Objector's appeal will result

in significant costs to the thousands of Settlement Class members waiting to be compensated for

their claims against Defendant. While the appeal is pending, Plaintiffs will be unable to distribute

the $14 million Settlement Fund that the Settlement Class is entitled to receive under this Court's

Final Approval Order. The median time from the filing of a notice of appeal to final disposition in

the First Circuit is approximately 12.6 months. *See* Administrative Office of the United States

Courts, 2020 ANNUAL REPORT OF THE DIRECTOR: JUDICIAL BUSINESS OF THE

UNITED STATES COURTS (2020) at Table B-4. And, even when the Objector is unsuccessful

before the First Circuit, Plaintiffs have reason to believe that Attorney Isaacson will pursue a

further appeal to the United States Supreme Court, which will take additional time. As outlined in

the Geraci Declaration, the Class will incur additional administrative costs as a result of this delay

for maintaining the settlement website, answering phone calls, and responding to Class Members'

questions. Geraci Decl. at ¶2. These costs are estimated to total approximately $23,765 if the appeal is pending for 18 months. *Id.*

These costs will be deducted directly from the recovery achieved on behalf of the Settlement Class and reduce the recovery for all Class Members. *See* Doc. 107 (ordering Settlement Administrator to be paid from the Settlement Fund). Courts routinely require appellate bonds to safeguard the class against such unnecessary costs. *See In re JPMorgan Chase Mortg. Modification Litig.*, No. 11-02290-RGS, 2014 WL 6833182, at *1 (D. Mass. Dec. 3, 2014) ($50,000 bond imposed and stating "the likely costs of this appeal are not only those related to the appeal itself, but also damages to the [class] that will result from the delay in receiving settlement benefits"); *In re Pharm. Indus.*, 520 F. Supp. 2d at 279 (requiring $61,000 bond for administrative costs that class would suffer as a result of delay in distribution from class action settlement); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1-*2 (D. Me. Oct. 7, 2003) (costs of delay or disruption of settlement may be included in Rule 7 bond and granting $35,000 appeal bond for those costs).

## B.      Ms. McDonald and Attorney Isaacson are frequent objectors.

The Objector and her attorney, Eric Isaacson, are repeat class action objectors. Ms. McDonald has previously objected to class action settlements in at least six cases. Attorney Isaacson has himself filed a number of objections to class action settlements in conjunction with another attorney, John Davis, who has represented or co-counseled with Attorney Isaacson when objecting to a number of other class action settlements, including in *Muransky v. Godiva Chocolatier*, Case No. 15CV60716, 2016 WL 11601079 (S.D. Fla. Sept. 16, 2016) (Isaacson objector; Davis and Isaacson co-counsel); *Chieftan Royalty v. Enervest Energy Inst'l Fund XIII-A LP*, Case No. 5:11CV177 (W.D. Okl.) (Davis and Isaacson co-counsel for objector); and

*Chambers v. Whirlpool Corp.*, 11CV1733 (C.D. Cal.), Doc. 227 (Davis and Issacson co-counsel for objector). Additionally, Attorney Isaacson has represented Attorney Davis as an objector in at least two cases—*Davenport v. Discover Financial Services*, Case No. 1:15CV06052 (N.D. Ill.) and *In re Equifax,* Case No. 1:17-MD-2800 (N.D. Ga.). Notably, in the appeal of the *Equifax* settlement approval to the Eleventh Circuit, the district court's overruling of the objections was upheld on appeal (with the exception of the service award issue, based on *Johnson*) and the Eleventh Circuit affirmed the district court's decision to order the objectors to post an appeal bond. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1283 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021).

Courts frequently impose appeal bonds where potentially frivolous appeals are asserted by repeat objectors because they often assert meritless objections that provide little or no benefit to the class. That is true here, where Attorney Isaacson appears to be on a moral crusade against service awards. This moral crusade has no demonstrable benefit to the Settlement Class, where the Objector has cited to no evidence that the named Plaintiffs were motivated by anything other than the best interests in the Settlement Class when discharging their class representative duties. The small amount of the Settlement ordered as service awards to these Plaintiffs, who dedicated their time and attention to the TCPA claims against the Defendant in order to help others like them obtain some redress that would be nearly impossible to obtain on an individual basis, is not taking anything away from the recovery the Settlement class will receive.

As a court in this District noted in similar circumstances, "[r]epeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements." *Barnes*, 2006 WL 6916834, at *1; *see also In re Pharm. Indus.,* 520 F. Supp. 2d at 278 ("[r]equiring objectors to post a bond will ensure that a class litigating a frivolous

11

appeal will not be injured or held up by spoilers"). "Under these circumstances, Fed. R. App. P. 7 makes perfect sense: by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class." *Barnes*, 2006 WL 6916834, at *1. An appeal bond that "ensure[s] that the class can recoup the costs of appeal" is appropriate here, where the significant delay caused by Ms. McDonald's appeal will directly impact the Settlement Class's recovery under the Settlement. *Id.*

## III.     An Appeal Bond in the Amount $23,795 Should Be Ordered.

An appropriate bond in this case should be at least $23,795, which is considerably less than the bonds that other courts have required objectors to post in similar circumstances. *See, e.g.*, *Hoff v. Popular, Inc.*, Civil No. 09-1428 (GAG/BJM), slip op. (D.P.R. Jan. 9, 2012) (requiring objector appellants to post $160,000 appeal bond including $125,000 in estimated attorneys' fees and $35,000 in costs); *Barnes*, 2006 WL 6916834, at *3 (requiring a $645,111.50 bond to cover costs of appeal); *In re Wal-Mart Wage & Hour Empl't Practices Litig.*, No. 2:06-cv-00225-PMP-PAL, 2010 WL 786513 at *2 (D. Nev. Mar. 8, 2010) (requiring appeal bond of $2 million in order to "secure and ensure payment of costs on appeals which . . . are without merit and will almost certainly be rejected").

In this case, a bond in the minimum amount of $23,795 would cover (1) the direct administrative costs due to the delay resulting from the appeal ($23,765) and (2) taxable costs under Rule 39 ($60).

**Administration Expenses.** As discussed above, the Settlement Administrator, KCC, estimates that additional administrative expenses will result from an expected 18-month delay in distribution of the Settlement during the period for resolution of an appeal to the First Circuit and subsequent request to the Supreme Court for review are approximately $23,765. Geraci Decl. at

¶2. Those expenditures will come directly from the Settlement Class's recovery, even though Plaintiffs expect the appeal to be defeated. *See In re JPMorgan Chase Mortg. Modification Litig.*, 2014 WL 6833182, at \*1 ("the likely costs of this appeal are not only those related to the appeal itself, but also damages to the [class] that will result from the delay in receiving settlement benefits," and ordering a $50,000 appeal bond for those costs).

**Allowable Taxable Costs ($60).** Costs on appeal also include those costs itemized in Rule 39 of the Federal Rules of Appellate Procedure, such as the costs to prepare and reproduce the briefs. Fed. R. App. P. 39. Class Counsel estimates that their taxable costs for the appeal under Rule 39 will be $60 to cover the estimated costs for preparing and copying the appellate brief and related documents. Paronich Decl.

## RULE 7.1(A)(2) CERTIFICATION

Undersigned counsel for the Plaintiffs certifies that on December 21, 2021 they communicated with counsel for the objector the fact that they would be seeking the appellate bond, the amount they would be seeking and the breakdown of that amount. Counsel for the Plaintiffs presented counsel for the objector an opportunity to agree to the bond, but the objector did not respond that they would stipulate to the bond.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court require Objector to post an appeal bond of $23,795 within seven calendar days of the date of the requested order.

Dated: December 22, 2021                    Plaintiffs by their attorneys,

                                            */s/ Anthony I. Paronich*
                                            PARONICH LAW, P.C.
                                            Anthony I. Paronich
                                            350 Lincoln Street, Suite 2400

13

Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

Stacey P. Slaughter (*pro hac vice*)
Brenda L. Joly (MA657255; MN386791)
ROBINS KAPLAN LLP
800 LaSalle Ave., Suite 2800
Minneapolis, MN 55402
sslaughter@robinskaplan.com
bjoly@robinskaplan.com

TURKE & STRAUSS LLP
Samuel J. Strauss (*pro hac vice*)
613 Williamson Street, Suite 100
Madison, WI 53703
(608) 237-1775
Sam@turkestrauss.com

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will automatically send notification to all

attorneys of record.

/s/ Anthony I. Paronich
Anthony I. Paronich