## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GRACE MURRAY, STEPHEN BAUER, JEANNE TIPPETT, ROBIN TUBESING, NIKOLE SIMECEK, MICHELLE MCOSKER, JACQUELINE GROFF, and HEATHER HALL, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

GROCERY DELIVERY E-SERVICES USA INC. DBA HELLO FRESH

Defendant.

Case No. 1:19-cv-12608-WGY

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND DISTRIBUTION

## INTRODUCTION

After two years of litigation and another two years of appellate practice and subsequent proceedings, the parties have agreed—with significant input from counsel for the objector—on an eleven million dollar ($11,000,000) common-fund settlement for a re-defined settlement class ("Revised Settlement"). While the Revised Settlement is less in dollar amount than the previously agreed-upon settlement of fourteen million dollars ($14,000,000), it narrows the class and thereby provides for a settlement payment per class member that is substantially larger than what was previously approved. The Revised Settlement remains the largest settlement in Massachusetts federal court history for a lawsuit about Telephone Consumer Protection Act[1] ("TCPA") violations and complies with the First Circuit's mandate in *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340 (1st Cir. 2022). The objector agrees that the Revised Settlement is a substantial improvement over the previous settlement, and therefore does not object.

The parties, including the objector, negotiated this arm's-length Revised Settlement under the guidance of the Honorable Patrick King, Chief Settlement Counsel for the First Circuit Court of Appeals. The parties have agreed to narrow the settlement class to consist only of those individuals who received telephone calls and whose numbers were listed on the National Do-Not-Call Registry. Individuals excluded by the new class definition will receive notice that they are not covered by the agreement. *See* Dkt. Nos. 155, 156, 165.

Furthermore, because narrowing the settlement class substantially *increases the recovery* that the settlement-class members will receive, and individuals who are no longer settlement-class members will receive notice informing them of that fact and that the Revised Settlement

---

[1] 47 U.S.C. § 227.

fully preserves their right to pursue their own claims, the Court and parties need not reissue notice to settlement-class members, nor provide additional settlement-approval procedures for additional opt-outs, objections, or claims. The 66,397 settlement-class members with National Do-Not-Call Registry claims who filed a claim more than two years ago can now receive their settlement payments. As explained further below, these individuals are estimated to receive a settlement payment of $120, which is larger than the previously approved $100 payment.

The road to this enhanced settlement was circuitous, but it is a path Rule 23 itself wisely sets out. Rule 23 intentionally subjects settlements to potential vetting by adversarial challenge. That sometimes results in the refinement and improvement of a settlement, or in the clarification of legal doctrine through appeal. This case saw both. It is an example of the system working as intended to advance class jurisprudence and to vindicate and preserve the rights of the participants in class action litigation.

Because the Revised Settlement is fair, reasonable, and adequate, Named Plaintiffs respectfully move the Court to approve the settlement and order an immediate distribution.

## BACKGROUND AND THE REVISED SETTLEMENT

### A. The Prior Settlement and First Circuit Decision

On December 30, 2019, plaintiff Grace Murray filed a putative class action complaint (the "Complaint") in the United States District Court for the District of Massachusetts against Grocery Delivery E-Services USA Inc. d/b/a HelloFresh ("HelloFresh" or "Defendant," and together with Plaintiff, the "Parties") captioned *Grace Murray v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, Case No. 19-cv-12608-WGY (the "Action"). The Complaint alleged that HelloFresh violated various provisions of the TCPA. On November 11, 2020, plaintiff Murray filed a First Amended Complaint adding the following additional plaintiffs and new claims: Jeanne Tippett,

Stephen Bauer, Robin Tubesing, Nikole Simecek, Michelle McOsker, Jacqueline Groff, Amanda Engen,[2] and Heather Hall. *See* Dkt. No. 59.

On December 28, 2020, the Court granted Preliminary Approval of a Class Action Settlement and ordered Notice to be sent to all 4,869,004 individuals that had a potential TCPA claim involving: (1) autodialed calls to cellular telephones, (2) telemarketing calls to an individual on the National Do-Not-Call Registry, or (3) telemarketing calls to an individual who had asked to be placed on the Internal Do Not Call Registry. *See* Dkt. No. 67.

On October 15, 2021, the U.S. District Court presiding over the Action issued an order granting final approval of that class-action settlement over the objection of Objector Sarah McDonald. *See* Dkt. No. 107. The Objector appealed to the U.S. Circuit Court of Appeals for the First Circuit, which, on December 16, 2022, issued a ruling reversing the final-approval order of the District Court. *Murray*, 55 F.4th at 354. The First Circuit held that the district court lacked the requisite basis for certifying the settlement class because the class consisted of members with claims involving different elements and defenses, and because the relative values of those different claims was not sufficiently clear-cut to enable a court to approve a proposed apportionment of a common fund in the absence of an informed arm's length negotiation. *Id*. at 351. The First Circuit upheld the settlement's provision of incentive awards and remanded for further proceedings consistent with its opinion. *Id*. at 353-54.

### B. The Supplemental Settlement

On October 10, 2023, Plaintiffs filed a Second Amended Complaint limiting the individual and class claims to unsolicited telemarketing calls to plaintiffs on residential telephone numbers

---

[2] On April 26, 2023, this Court granted the Parties' joint motion to dismiss Amanda Engen's individual claims against HelloFresh. *See* Dkt. No. 138.

listed on the National Do-Not-Call Registry, thereby eliminating any potential conflict among

subclasses. *See* Dkt. No. 153. The Parties submitted an unopposed motion to provide notice to

persons no longer included within the narrower class. Dkt. No. 155. Through a mediation session

with the Honorable Patrick King, and subsequent negotiations between the Plaintiffs, Defendant,

and Objector, the parties agreed to a new class-action settlement, limited to individuals with a

National Do-Not-Call Registry ("NDNCR") claim for an $11,000,000 common fund. *See* <u>Exhibit</u>

<u>1</u>, Supplemental Class Action Settlement Agreement.

### C. The Supplemental Settlement Increases the Recovery for Settlement Class Members

The Revised Settlement is for the following class:

> All persons in the United States from September 5, 2015, to December 31,
> 2019, to whom HelloFresh, either directly or by a vendor of HelloFresh,
> placed at least two telemarketing calls during any 12-month period where
> their phone numbers appeared on the NDNCR for at least 31 days before
> the calls.[3]

*See* Revised Settlement Agreement at ¶ 1.37. The number of class members covered by this

settlement narrowed to 2,652,606, to comply with the First Circuit's mandate, while the prior

settlement included 4,869,004 individuals. *See* Dkt. No. 107. As explained below, under this

Revised Settlement Agreement the 66,397 individuals on the NDNCR who already filed a claim

are entitled to an immediate payment, and their recovery will increase from the prior settlement.

---

[3] Excluded from the Settlement Class are: (1) the Judge presiding over the Action (or the Judge
or Magistrate presiding over the action through which this matter is presented for settlement),
and members of their families; (2) the Defendants, their parent companies, successors,
predecessors, and any entity in which the Defendant or its parents have a controlling interest, and
Defendant's current or former officers and directors; (3) persons who properly execute and file a
timely request for exclusion from the class; and (4) the legal representatives, successors, or
assigns of any such excluded person(s).

4

## ARGUMENT

The First Circuit Court has long recognized that there is an overriding public interest in favor of settling class actions, *Lazar v. Pierce,* 757 F.2d 435, 439 (1st Cir. 1985); *see In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements").

### A.  The Class Meets the Rule 23(a) and (b)(3) Standard

For certification, the class must satisfy Fed. R. Civ. P. 23(a) and (b). As briefed already, the prior settlement class meets the numerosity, commonality, typicality, and adequacy requirements. Dkt. Nos. 61, 71. The class also meets the Fed. R. Civ. P. 23(b) predominance and superiority requirements. Dkt. No. 61. However, the Plaintiffs will briefly provide an overview of each factor again below.

#### 1.  Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005). The issue is not merely the numerical size of the class but, as explicitly stated in Rule 23(a)(1), that joinder is impracticable. *Hansberry v. Lee*, 311 U.S. 32, 41 (1941). The proposed settlement class encompasses 2,652,606 individuals from the prior settlement class. This number of class members demonstrates that joinder is simply a logistical impossibility. *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800-to-900-member class made joinder impracticable).

#### 2.  Commonality

Rule 23(a)(2) commonality exists "if there are questions of law or fact common to the class." *Swack*, 230 F.R.D. at 259. This requirement is construed permissively and is often easily met. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997)

(describing the commonality requirement as a "low hurdle"). Here, Plaintiff contends that the common questions are dispositive, apply equally to all class members, just as the prior settlement did, and can be resolved using common proof and uniform legal analysis. They include: (1) Were class members' telephone numbers on the National Do-Not-Call Registry called; (2) Did HelloFresh have the recipient's "prior express consent" signed in writing?; (3) Did HelloFresh appropriately screen class members on the Do-Not-Call Registry?; (4) Are class members entitled to statutory damages?; (5) Is HelloFresh liable for the telemarketing activity of its third-party vendors? Plaintiffs allege that these legal and factual questions are shared by all class members.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." The requirement generally is satisfied if the "class representative[s] . . . 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). As long as the named representative's claim arises from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory, varying factual differences between the claims or defenses of the class and the class representative will not render the named representative's claims atypical. *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997). Here, Plaintiffs contend that they and all Settlement Class Members were listed on the National Do-Not-Call Registry yet received similar telemarketing calls as part of a single HelloFresh telemarketing campaign to "win back" former customers. All putative class members' claims flow from the same conduct, so typicality is satisfied.

6

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The First Circuit employs a two-part test in analyzing adequacy: (1) the class representatives' interests must not conflict with the interests of the class; and (2) class counsel is experienced, qualified, and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Both requirements are met. First, Plaintiffs' counsel are experienced class-action lawyers whose combined experience in TCPA class actions, and current diligence and commitment to this litigation more than adequately protect the interests of the class, as this Court has previously found. *See* Dkt. No. 107. Second, there is no conflict or antagonism between the Plaintiffs and the Settlement Class Members. All share a united interest in putting an end to Defendant's allegedly illegal telemarketing practices, all seek redress for the harm they suffered because of the practices, and the class is limited to Do-Not-Call Registry claims.

### 5. Rule 23(b)(3) Is Satisfied

#### a. Common Issues Predominate

As the Supreme Court has held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* TCPA claims, by their nature, involve large numbers of plaintiffs who received identical telemarketing contacts, a small number of defendants, and a common course of conduct that affected each plaintiff and class member in the same way. Furthermore, as discussed above

in connection with the commonality requirement under Rule 23(a)(2), the Plaintiffs contend they have identified at least five common issues that arise from Defendant's common course of conduct and are suitable for class adjudication.

Predominance exists here. As discussed above, virtually all issues of law and fact are identical among the class members. Under these circumstances, the requirements of Rule 23(b)(3) are present. Courts have routinely found predominance of common questions where the claims relate to a common course of conduct. *See, e.g., Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. 54, 64 (D. Mass. 1997) (requirement is "readily met in cases alleging consumer . . . fraud" where claim alleges single course of conduct) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

### b. A Class Action Is the Superior Method of Adjudicating This Matter

The second prong of the analysis under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The TCPA's allocation of statutory damages in an amount not to exceed $1,500 per violation, and its lack of a statutory fee-shifting provision effectively means that it is not economically viable for class members to pursue claims against the defendants on an individual basis. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. Indeed, the Massachusetts Court of Appeals has agreed with "the majority of courts to have discussed the issue under various cognate class action provisions and h[e]ld that the class action mechanism is a superior avenue for adjudication of claims under 47 U.S.C. § 227." *Hazel's Cup & Saucer, LLC v. Around The*

*Globe Travel, Inc.,* 86 Mass. App. Ct. 164, 167, 15 N.E.3d 220, 223 (2014). A single litigation is superior to a series of other litigations or to individuals potentially foregoing their claims.

**B.  Diverse and Substantial Legal and Factual Risks Weigh in Favor of Settlement**

Litigating this case is not without risks. For example, whether cellular telephones are properly subject to the TCPA's Do-Not-Call provision is an often-litigated issue. *See, e.g., Morgan v. U.S. Xpress, Inc.,* No. 3:17-CV-00085, 2018 WL 3580775, at *2–3 (W.D. Va. July 25, 2018) (granting motion to dismiss because Plaintiff failed to plausibly allege the calls were made to a "residential telephone line" within the meaning of the relevant section of the TCPA). The *Morgan* court went so far as to say: "It would be odd if a cell phone, largely used outside the home and at work, became a residential line just because it was brought home and thereby erased those statutory categories." *Id.* HelloFresh has also maintained that all the calls at issue here were made by their vendors, and that any calls that violated the TCPA are breaches of those vendors' contractual obligations. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), held that traditional agency and vicarious liability principles apply for liability under the TCPA. Several TCPA cases have been dismissed for failure to establish the defendant's knowledge of a vendor's illegal conduct. *See e.g. Jones v. Royal Administration*, 887 F.3d 443 (9th Cir. 2018). Indeed, even TCPA cases that were certified have then been dismissed on summary judgment due to vicarious-liability issues. *See, e.g., McCurley v. Royal Sea Cruises, Inc.,* No. 17-cv-00986-BAS-AGS, 2021 WL 312005 (S.D. Cal. Jan. 29, 2021).

Class certification is also far from automatic in TCPA cases. *See, e.g., Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation). In addition, at least some courts view awards of aggregate, statutory damages under the TCPA with skepticism and reduce such awards on due-process grounds, even after a plaintiff has

prevailed on the merits. *See, e.g., Golan v. FreeEats.com*, *Inc.*, 930 F.3d 950 (8th Cir. 2019) (reducing TCPA statutory damages in class action to $10 per call).

Even though Plaintiffs believe that this case is appropriate for class-action treatment, Courts have decertified TCPA classes for a variety of reasons. *See, e.g., Cordoba v. DIRECTV, LLC,* 942 F.3d 1259 (11th Cir. 2019) (decertifying TCPA class due to predominance issues related to standing); *Trenz v. On-Line Adm'rs*, No. 2:15-cv-08356-JLS-KS, 2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) (same, but for individualized issues of consent). Any decision to grant certification absent settlement would be subject to the delay and uncertainty of a Rule 23(f) appellate challenge before the class could proceed to trial. And, an appeal from any verdict or judgment in favor of the class could likewise follow. If a class could not be certified, then it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for each statutory violation on their own, with the practical result of no recovery by anyone.

Rule 23(e)(2)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." The settlement requires HelloFresh to pay $11,000,000 into a settlement fund. Revised Settlement Class members who have submitted a valid claim will receive approximately $120, an amount that far exceeds comparable common-fund settlements against large corporations alleged to have violated the TCPA.[4] The Revised Settlement provides substantial relief to class members without delay or litigation risk.

---

[4] *See e.g.*, *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) ($24.00); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn, 2016) ($33.20); *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 WL 4273358, at *13

The Court previously considered all these factors while granting approval of a settlement that covered a larger class, including class members who had only Automatic Telephone Dialing System ("ATDS") claims, and that had consumers registered on the NDNCR receiving substantially less than they are under this Revised Settlement. Absent settlement, trial, followed by appeals, could continue for years before the class would see any recovery. A Revised Settlement that eliminates this delay and expense strongly favors approval.

### C. The Terms of the Supplemental Settlement and the Proposed Additional Notice Satisfy Due Process for Both Present and Former Class Members; No Additional Rule 23(e) Procedures are Necessary

Rule 23(e) protects the due process rights of absent class members by providing for procedures—such as notice and the opportunity to object or opt-out—applicable to proposed class settlements. In this case, the parties submit that the Revised Settlement does not require the full panoply of Rule 23 procedures as a predicate to approval and is satisfied by providing adequate notice to former class members now effectively severed from the case.

The original settlement covered three types of claims: NDNCR, IDNC, and ATDS, a total of over 4.8 million class members. All were notified and given a full opportunity to opt out or object, and to file claims. In response to that notice, 270 class members opted out, 100,433 filed claims, and three filed objections, including Sarah McDonald, who prosecuted the objection and appeal that led to this Revised Settlement. Dkt. 79-1.

After the First Circuit illuminated the specter of conflict among the three claim groups, including the potential variation in the value of their claims, the parties concluded that a settlement encompassing all three would be untenable. Accordingly, this Court permitted the

---

(N.D. Cal. Aug. 29, 2014) ($20 to $40)); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) ($46.98); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) ($12.97).

filing of a Second Amended Complaint with the class narrowed to those holding NDNCR claims only, numbering some 2,652,606 members. Consequently, the Revised Settlement covers only the NDNCR claims, a subset of the original notified settlement class. Its terms are otherwise functionally identical to the original, except that the monetary relief has increased for the NDNCR claims, and HelloFresh has agreed to provisions designed to eliminate all possible prejudice to IDNC and ATDS claimants who were excluded from the SAC. The parties will send notice to these former class members that the SAC excludes them from the class and from the revised settlement, and which explains that their claims are not released and that they may pursue any claims they may have. HelloFresh will cover the costs to administer that notice, preserving all benefits for class members.

Under these facts, the Parties believe all requisite due-process procedures, including the right to opt-out and object, have already been satisfied. The Settlement Class is a subset of the class previously certified for settlement, which gave all class members adequate notice of that settlement's terms and afforded them full rights to opt-out or object, and to file claims. Although the first settlement was vacated, this Court's earlier findings that the notice of pendency and the settlement procedures were adequate still stand.

The parties need not notify NDNCR class members about the Revised Settlement because its revisions only enhance the benefits they will receive. Courts generally hold that there is no need to duplicate those procedures when a revised settlement is entered that is more favorable to class members than the original settlement. *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (district court did not abuse its discretion by declining to issue additional notice of settlement changes where they "merely expanded the rights of class members"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F.Supp.2d 184, 186 (D. Me. 2003)

(after rejecting initial settlement, district court approved improved settlement, but required notice only to those who objected to or opted-out of original settlement).

Here, despite decreasing the settlement fund from $14 million to $11 million, NDNCR class members will receive more under the Revised Settlement because there are fewer class members in total. Altogether, the class includes 66,397 claimants who claimed benefits from the original settlement. Under the Revised Settlement, they will receive about $120, compared to the $100 they would have received under the original. For that reason, those class members have no reason to object to or opt out from the Revised Settlement because their position has only improved. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 473 n.10 (D.N.J. 1997), *aff'd sub nom. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ("Class members have already received adequate notice both of the pendency of this class action and of the Proposed Settlement. Class members need not be informed of the Final Enhancements to the settlement because the Proposed Settlement is only more valuable with these changes. Plainly, class members who declined to opt out earlier, would not choose to do so now."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (additional notice of amendment to settlement was unnecessary because "no reasonable class member who chose not to opt out after receiving notice of the original settlement would decide to opt out based on the modified and improved settlement"); *Knuckles v. Elliott*, No. 15-10175, 2016 WL 3912816, at *6 (E.D. Mich. July 20, 2016) (modification of allocation plan increased class claimants' recoveries and therefore did not require further Rule 23(e) proceedings: "Class members who will receive a larger distribution and individuals who failed to opt-out or submit a Proof of Claim form . . . need not receive notice of the modification."). The same logic applies to Plaintiffs' attorney's fee request, which is notably less

than that originally awarded by this Court, both in percentage and absolute terms. *See* discussion, *infra*. Even considering an allocation to Objector McDonald, the combined request remains well below the fee request originally set forth in the notice of the original settlement.[5] The original fee request pursuant to that notice drew only one objection, that of McDonald herself.

Likewise, there is no cause to impose a renewed claims process, either requiring prior claimants to claim benefits again, or permitting new claimants who failed to file timely claims for the original settlement, would cause undue delay and eat into their recovery with administrative costs. *E.g., Trombley v. Bank of Am. Corp.*, No. 08–0456, 2013 WL 5153503, at *6 (D.R.I. Sept. 12, 2013) (holding that "no additional notice nor a second hearing is necessary" when the compensation provided by a revised settlement exceeds the original settlement, particularly when "a second approval hearing, and a second claims process would substantially increase the administrative costs"); *cf. Knuckles*, 2016 WL 3912816, at *6 (when subsequent modification of settlement's allocation plan increased timely claimants' recoveries, individuals who failed to submit claims were not entitled to notice of the modification).

Individuals included in the earlier settlement class who had only IDNC or ATDS claims—and no NDNCR claims—are not included in the Second Amended Complaint or the Revised Settlement Class. They will receive notice of that fact and its implications, as described above. Additionally, the Parties have meticulously structured the Settlement to eliminate any possible prejudice or disadvantage from their earlier inclusion in the case. They are returned to the status quo ante and are free to pursue their claims for whatever they may be worth, as if this

---

[5] Plaintiffs have agreed not to oppose a fee request of no more than $750,000 by Objector McDonald's counsel in recognition of their work both in this Court, and in the First Circuit Court of Appeals. McDonald is submitting declarations concurrently herewith in support of this fee allocation. The proposed allocation of fees between Plaintiffs' counsel and Objector's counsel will not reduce class members' recovery.

case had not happened. For the same reason, class members who have IDNC or ATDS claims *in addition to* NDNCR claims are not prejudiced by the settlement of one claim and the dismissal, without prejudice, of the others.

For those former class members, the Revised Settlement has no material adverse effect on their rights, and so the notice of the change in their status amply satisfies due process requirements: no further procedures are necessary. *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 313-14 (D.D.C. 2015) (holding "an amendment that neither adds to the res judicata effect of a judgment by expanding the scope of covered claims nor otherwise limits any legal right held by a class member need not be subject to a renewed Rule 23(e) process" and noting that an amendment requires supplemental notice only when it "would have a material adverse effect on the rights of class members" (citations omitted)). There is, for example, no reason to permit the now-excluded individuals a renewed opportunity to opt-out or object. The opportunity to opt out of the class is a non sequitur when they are no longer in it. More fundamentally, the former class members lack standing to object to the terms of a settlement that does not apply to them. *E.g.*, *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."). The burden for non-class parties to intervene in a settlement is extremely high. To establish sufficient standing to intervene for that purpose, they would have to demonstrate "plain legal prejudice" worked upon them by the settlement. *In re Vitamins Antitrust Class Actions,* 215 F.3d 26, 31 (D.C. Cir. 2000) (affirming denial of intervention to group of opt-out plaintiffs who sought to object to later class settlement: because they had "fully preserved their right to litigate their claims independently" they could not show "plain legal prejudice" required to support intervention.); *cf. In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 14 (1st Cir. 1980) (non-

settling defendant was unable to show its rights were cognizably affected by a notice of partial class settlement, and thus had no standing to object to or appeal the court order approving it). Meeting that standard is almost impossible where, as here, the IDNC and ATDS claimants have been given supplemental notice and their claims have been carefully preserved, not merely by operation of law, but expressly by the settling parties.

The terms of the Revised Settlement are more favorable than the original settlement for NDNCR claimants who are bound by it, and it does not materially prejudice the IDNC and ATDS claimants comprising the remainder of the original class, whose rights are wholly preserved and who will receive notice that they are not bound by the settlement and can pursue their claims. The pro-rata settlement amounts allocable to Revised Settlement Class members who made claims exceeds what they would have received under the prior settlement, and there are no novel or additional grounds upon which to opt-out or object to the Settlement. Therefore, there is no justification for employing additional Rule 23(e) procedures beyond the notice to former class members proposed by the parties.

**D.    The First Circuit Held that Named Plaintiffs are Entitled to Seek Service Awards**

Although Objector McDonald earnestly contended on appeal in this matter that "Supreme Court precedent prohibits incentive awards," *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1255 (11th Cir. 2020), the First Circuit rejected that contention. *See Murray,* 55 F.4th at 352-53. The First Circuit's opinion is therefore not only binding Circuit law, it is also the law of the case.

Accordingly, Plaintiffs respectfully renew their requested approval of service awards, including an award of $10,000 to Grace Murray, class representative in the Massachusetts case, and awards of $5,000 each to Jeanne Tippet and Stephen Bauer, the class representatives in the New York case. Ms. Murray actively participated in discovery, responding to interrogatories and providing documents (including call records) to be produced. Ms. Tipper and Ms. Bauer

searched for and provided documents to Class Counsel, including call records and BBB complaints. The Plaintiffs further respectively request service awards of $2,000 each to Robin Tubesing, Nikole Simecek, Michelle McOsker, Jacqueline Groff, and Heather Hall for agreeing to serve as class representatives in the First Amended Complaint.

Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case-contribution awards to plaintiffs who prosecuted actions "to recognize their willingness to act as a private attorney general." *Ridgeway v. Wal-Mart Stores Inc.,* 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017). The service awards are justified and reasonable considering the proposed recipients' individual and collective efforts. Service awards serve an important function in advancing class action suits. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Class Counsel's request for service awards to Plaintiffs of up to $10,000 is in line with service awards that courts have approved in comparable TCPA matters, and is in fact on the lower end. *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 Service Award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 Service Award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

**E. Despite Litigating an Appeal, Further Proceedings at the District Court and Further Negotiations, Counsel for the Plaintiffs and Objector are Collectively Seeking an Attorney Fee Award Less than what this Court Previously Awarded and the Parties have Agreed on a Fee Allocation for Objector's Counsel**

Attorneys' fees for Class Counsel and McDonald's counsel were the subject of no small dispute between them, as each had a strong incentive to drive down the other's claims against the common fund to preserve the result justifying their own fee claim. After negotiation, Plaintiffs and Objector mutually agreed not to contest each other's fee requests, if Plaintiffs sought no more than $2.2 million and McDonald sought no more than $750,000. The requested fees are reasonable. This Court previously awarded Plaintiffs' counsel $3,393,812.47 in attorneys' fees and $36,443.76 in costs. *See* Dkt. No. 117. That award was supported by both the lodestar and the common fund analysis, as previously considered by this Court. *Id.* Since that time, the Plaintiffs' counsel have litigated an appeal, engaged in further proceedings before this Court and negotiated a new settlement. However, Plaintiffs' counsel has reduced its fee requests to 20% of the common fund (or $2,200,000), plus the reasonable reimbursement of costs.  Class Counsel's costs total $44,178.95.[6] Likewise, Plaintiffs' agreement not to contest a $750,000 attorney fee to Objector's counsel reflects recognition of their work both in this Court and on appeal, without which the Revised Settlement would not have been possible. Bringing the Revised Settlement to fruition required highly focused and creative lawyering by both Plaintiffs' and Objector's counsel, given the procedural complexities and the posture of the parties on remand.

If this Court grants both Plaintiffs' and McDonald's fee requests in full, the combined fees will be $2,950,000, which is less than this Court awarded to Class Counsel in the original settlement. The combined fee will equal approximately 26.8% of the total $11 million fund.

---

[6] Class Counsel also incurred additional attorneys' fees related to the continued litigation and the appeal and can provide the additional amount to the Court if required.

Viewed another way, Class Counsel's requested fee now equates to around 20%, and McDonald's fee request equates to 6.8% of the $11 million gross common fund.[7]

The requested fees are reasonable from all these perspectives, falling squarely within percentage awards regularly made in this Circuit. In this Court and in the First Circuit, an award of one-third the common fund has been held to be appropriate in many class-action cases, including cases where settlement administration expenses have *not* been removed from the total common fund analysis. *See, e.g. Dahl, et al. v. Bain Capital Partners, LLC, et al.*, 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33 1/3 percent of Settlement Fund) (Dkt. 1095); *In re Loestrin 24 Fe Antitrust Litig.*, 1:13-md-2472- WES-PAS, 2020 WL 4035125, at *4-5 (D.R.I. July 17, 2020) *report and recommendation adopted*, No. 1:13-md-2472-WES-PAS, Dkt. No. 1462 (D.R.I. Sept. 1, 2020) (awarding 1/3 of fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-82 (D. Mass. 2005) (approving 1/3 fee award); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (observing common funds range between "20% at the low end to 33% at the high end" and noting that most awards range "25% (the benchmark) and 30%.").

A recent case from this district illuminates the reasonableness of the fee requests against the result obtained here. In *Physicians Healthsource, Inc. v. Vertex Pharms. Inc.*, No. 1:15-CV-

---

[7] Viewed yet another way, the original settlement comprised $14 million for a class of 4,869,004. Dkt. No. 107. Of that larger class, 2,652,606 were NDNCR claimholders, so that their proportional share of the original settlement was approximately 54% of $14 million, or $7,560,000. The Revised Settlement confers $11 million on the NDNCR class alone, a $3,440,000 increase over the NDNCR subclass' share of the original settlement. Class Counsel's request equals about 29% of the NDNCR claimholders' $7,560,000 proportional share of the fund obtained in the original settlement, before McDonald's involvement, while McDonald's fee request equals about 22% of the $3,440,000 increase to NDNCR claimholders over the original settlement.

11517-JCB, 2019 WL 13178515, at *2-3 (D. Mass. Mar. 21, 2019), the district court declined to award a one-third fee from a $4.75 million common fund and instead awarded 28%, chiding class counsel for referring to the settlement as the "largest TCPA recovery in District of Massachusetts history" because the reversionary settlement would return only $351,000 to the class. *Id.* This, the judge observed, meant the awarded fee was "more than four times the amount of money that will be received by clients in whose name the suit was brought." *Id*. Here, by contrast, the $11 million common fund in the Revised Settlement is not reversionary: after fees and expenses, every dime goes to the claimants. In this case, a combined fee of 26.8% is amply justified.

Plaintiffs thus renew their fee request, based upon the documentation Class Counsel previously submitted, which this Court found sufficient to award a fee for the original settlement. Objector's fee request will be filed herewith, along with equivalent documentation.

<u>**CONCLUSION**</u>

The Revised Settlement is an example of Rule 23 fostering best practices in class litigation. In response to McDonald's objection and appeal, the parties negotiated a settlement that improved the result for the core claimholders in the case, while protecting the rights of those severed from the case. This Court previously found the settlement's pecuniary benefits to be fair, adequate, and reasonable, and they are more so now. Accordingly, Plaintiff respectfully requests that this Court grant final approval to the Revised Settlement. A Proposed Order is being submitted with this motion.

DATED this 25th day of January, 2024.

Plaintiff,
By their attorneys,

*s/ Anthony Paronich*
Anthony Paronich
**Paronich Law, P.C.**
350 Lincoln St, Suite 2400
Hingham, MA 02043
Phone: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com